■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CRAIG ENGLER, Appellant.—Mercure, J. Appeal from a judgment of the County Court of Sullivan County (Vogt, J.), rendered December 14, 1987, upon a verdict convicting defendant of the crimes of manslaughter in the second degree, assault in the second degree and endangering the welfare of a child.

On January 13, 1987 at approximately 3:15 P.M., Andrew Dantzler, a Deputy with the Sullivan County Sheriff's Department, responded to an emergency call at defendant's residence. Upon arriving there, he observed defendant ostensibly attempting cardiopulmonary resuscitation (CPR) upon a 17-month-old infant, Bryan Conrad, while the child's mother, Joanne Conrad, looked on. Defendant stated that Bryan had choked while eating a hot dog. The child was rushed to a hospital but was pronounced dead on arrival. An initial exam-

ination revealed that there was extensive bruising on the child's body, particularly on the left side of his face and head and the back of his right leg. An autopsy performed later that day revealed extensive bruising all over Bryan's body, 300 cubic centimeters of blood in the abdominal cavity, a 1½-inch laceration of the liver, bruised, hemorrhaged lungs and multiple rib fractures. Dr. Wing Chau, the pathologist who conducted the autopsy, testified that the bruises were of different ages, that Bryan's death resulted from massive bleeding from the liver which, in turn, resulted from a traumatic blow, that death occurred between 2:30 P.M. and 3:00 P.M. and that the baby died approximately 30 minutes or less after the injury was inflicted. These findings were consistent with those of Dr. Michael Baden, a pathologist having extensive experience with abused children, who examined Bryan at Chau's request.

Defendant was questioned by police and gave a detailed description of the day's events. He stated that he got up at 12:45 P.M. and observed Bryan in his playpen eating a hot dog. Thereafter, he drove Conrad to the unemployment office, arriving at 2:20 P.M., and continued with Bryan to the boxing gym where defendant worked. Defendant said he took Bryan into the gym, placed him on the boxing ring mat and shortly thereafter left with Bryan to pick Conrad up at the unemployment office. When they arrived home, Conrad noticed that something was wrong with Bryan and the Sheriff's Department was called. Defendant also acknowledged that while he was caring for Bryan on prior occasions the child fell into a vaporizer, receiving burns to his face, and broke his arm when he fell from a toy in his playpen.

Defendant was charged with murder in the second degree (two counts), assault in the second degree (two counts), assault in the third degree and endangering the welfare of a child. At the conclusion of its deliberations, the jury returned a verdict finding defendant guilty of manslaughter in the second degree, assault in the second degree and endangering the welfare of a child. He was sentenced to concurrent terms of imprisonment of 5 to 15 years on the manslaughter conviction, 2⅓ to 7 years on the assault conviction and one year on the conviction of endangering the welfare of a child. This appeal followed.

Initially, we reject the claim that County Court committed reversible error in receiving evidence of defendant's prior physical abuse of his stepdaughter. Although it is axiomatic that proof of uncharged crimes is not permitted to establish a defendant's propensity to commit a crime *(People v Molineux,* 168 NY 264, 293), evidence of other crimes may be found

relevant to prove the absence of mistake or accident *(see, People v Dales,* 309 NY 97, 101) or the identity of the perpetrator *(see, People v Allweiss,* 48 NY2d 40, 47-49). Even if such evidence is found to be relevant to one of these issues, it still may not be received unless its probative value outweighs its prejudicial effect *(see, People v Sims,* 110 AD2d 214, 220, *lv denied* 67 NY2d 657). In cases involving charges of child abuse, evidence of a defendant's prior conduct is relevant to establish that the injuries were not accidental or were caused by another individual *(see, People v Kinder,* 75 AD2d 34, 45). The admission of such evidence "is especially warranted in cases such as the one before us, where the crime charged has occurred in the privacy of the home and the facts are not easily unraveled" *(People v . Henson,* 33 NY2d 63, 72; *see, People v Tuckerman,* 134 AD2d 732).

Here, the testimony revealed that Bryan lived for only 30 minutes after the lethal blow and that defendant and Conrad were the only people with him between 12:45 P.M. and the time of his death. In addition, defendant's statement to the police indicated that Bryan's previously sustained physical injuries, namely, bruises, a broken arm and facial burns, all resulted from accidents. Thus, the issues of identity and absence of mistake or accident were significant. We conclude that the evidence that defendant kicked and punched his stepdaughter on various occasions and immersed her in scalding hot water was properly admitted under these circumstances. Moreover, County Court instructed the jury that the evidence was only to be considered if it was clear and convincing and then only on the issues of identity and absence of accident or mistake, thus minimizing its prejudicial effect *(see, People v Allweiss, supra,* at 49; *see also, People v Robinson,* 68 NY2d 541, 550). In our view, the probative worth of the evidence outweighed its potential for mischief *(see, People v Hudy,* 73 NY2d 40, 55).

Next, contrary to defendant's assertion, and acknowledging that in reviewing convictions based solely on circumstantial evidence we "must exercise strict judicial scrutiny * * * to ensure that the jury has not drawn unsupported or unwarranted inferences", we conclude that the People established defendant's guilt beyond a reasonable doubt *(People v Sims,* 110 AD2d 214, 222-223, *supra; see also, People v Way,* 59 NY2d 361, 365). Both Chau and Baden testified that the time of death was between 2:30 P.M. and 3:00 P.M. and the evidence indicates that defendant was the only person with Bryan during this critical time period. Conrad testified that the baby

was fine when she left for her appointment, and defendant stated that Bryan opened his eyes while in the gym. Chau and Baden found that Bryan was struck in the abdomen with great force and that death occurred very quickly from the loss of blood. That defendant's expert could not state, within a reasonable degree of medical certainty, whether Bryan suffered the fatal injuries while with defendant at the boxing club merely created conflicting testimony for the jury to weigh. Furthermore, defendant acknowledged that he was alone with Bryan at the time the child was burned by the vaporizer and gave false and conflicting claims of the accident which, given the degree and distribution of the burns, were controverted by expert testimony. Additionally, defendant delayed medical treatment (see, People v Sims, supra, at 224) and eventually obtained insufficient treatment. Viewing the evidence in a light most favorable to the People, and giving the People the benefit of every reasonable inference (see, People v Montanez, 41 NY2d 53, 57), we conclude that the facts "are inconsistent with [the] claim of innocence and exclude * * * every hypothesis but guilt" (People v Sims, supra, at 223).

Nor are we persuaded that the prosecutor's remarks during summation constitute reversible error. An attorney is to be given wide latitude by way of comment in advocating his case (see, People v Ashwal, 39 NY2d 105, 109), and counsel has the right to comment upon any relevant fact or issue that relates to questions that the jury must decide (supra). Here, there was a question as to whether Conrad was sincere in her threats to kill her son. The prosecutor properly drew on the jury's common everyday experience as to what parents sometimes say to their children under stressful circumstances without genuine intent to cause harm. We conclude that the prosecutor's remarks, responding to defendant's summation (see, People v Shaw, 112 AD2d 958) and bearing on a legitimate issue in the case (cf., People v Ashwal, supra, at 109), did not render the trial unfair.

Finally, defendant maintains that the jurors engaged in unauthorized experimentation with the vaporizer, depriving him of a fair trial. County Court found that the jurors' conduct in filling the vaporizer with water and operating it to be nothing more than the application of "everyday experience" to the issues before them, and thus proper. We agree (see, People v Smith, 59 NY2d 988; People v Legister, 145 AD2d 576; cf., People v Brown, 48 NY2d 388). First, the vaporizer was properly admitted into evidence without objection; second,

the jurors' experimentation was limited to their deliberations in the jury room (cf., *People v Crimmins,* 26 NY2d 319). We cannot conclude, upon the standards set forth in *People v Brown (supra),* that the jurors' reenactment based upon their recollection of the testimony denied defendant a fair trial.

Judgment affirmed. Kane, J. P., Casey, Weiss, Levine and Mercure, JJ., concur.