(July 12, 1990)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES K. HAYES, Appellant.—Judgment of the Supreme Court, New York County (Robert Haft, J.), rendered on June 15, 1988, which convicted the defendant, after a nonjury trial, of manslaughter in the first degree (Penal Law § 125.20) and sentenced him to an indeterminate 8⅓-to-25-year term of imprisonment, is affirmed.

The defendant was convicted of manslaughter in the first degree after a nonjury trial. The People established, largely through the testimony of three expert witnesses, all of whom had examined the 14-month-old victim, that the infant sustained mortal second degree burns over a third of his body when the defendant, holding him by his hands and feet, forcibly immersed him in a tub which he had filled with scalding tap water. Given the severity of the burns, the People's experts were of the view that the temperature of the water had been between 140 and 160 degrees fahrenheit and that the infant had been immersed for at least 15 seconds and possibly as long as one minute. One of the People's experts,

Dr. Robert Birnbaum, stated that the baby would have instinctively attempted to get out of the water and would have screamed in agony as the burns were inflicted. Indeed, shortly after the immersion, when the infant's mother returned to the apartment where she had left her child alone with the defendant, she found the baby crying in excruciating pain as the skin melted from his body. Although the defendant initially attempted to dissuade the mother from seeking medical attention, the baby was eventually brought to the hospital where he died eight days later.

Although not disputing that the 14-month-old infant sustained his fatal injuries at the hands of the defendant in the above-described manner, our dissenting colleague maintains (at 169) that there was not sufficient evidence that the defendant's actions were performed "with intent to cause serious physical injury" as they must have been in order to constitute manslaughter in the first degree (Penal Law § 125.20 [1]).

Respectfully, we must differ. While we acknowledge that heightened scrutiny must be given convictions such as the one at bar based entirely on circumstantial evidence *(see, People v Way,* 59 NY2d 361, 365), we are unable, viewing the evidence, as we must on appeal, in the light most favorable to the prosecution *(People v Montanez,* 41 NY2d 53, 57; *People v Bracey,* 41 NY2d 296, 302; *People v Engler,* 150 AD2d 827, 830), to reach any other conclusion but that the defendant intended to cause the infant serious physical injury. Intent may be inferred from the act itself as well as the surrounding circumstances *(People v Bracey,* 41 NY2d 296, 301, *supra).* When a man forcibly immerses a baby in a tub he has filled with undiluted hot, indeed scalding, water, and holds the struggling and screaming infant in the water long enough to cause second degree burns over 30 to 35% of the baby's body, the intent to cause serious injury is not merely evident, it is glaring. Contrary to the dissent's argument, nothing in the defendant's conduct before or after the incident can be fairly adduced to diminish the force with which the manner of the crime's commission bespoke the defendant's intent seriously to injure the infant. Accordingly, the conviction for manslaughter in the first degree must be affirmed.

We have examined defendant's remaining points and find them to be without merit. Concur—Murphy, P. J., Rosenberger, Asch and Rubin, JJ.

Carro, J., dissents in a memorandum as follows: I respectfully dissent because there was not sufficient evidence from

which the fact finder could conclude that defendant acted with intent to cause serious physical injury to the victim. Accordingly, since the circumstantial evidence adduced by the People was insufficient to prove, beyond a reasonable doubt, this element of manslaughter in the first degree, I would modify the judgment of conviction, to the extent of reducing it to manslaughter in the second degree, and remand the matter for resentencing.

Of course, in considering whether the evidence presented was legally sufficient to support the conviction, it must be viewed in the light most favorable to the People, as it must be assumed from the conviction that the trial court credited the People's proof. *(People v Kennedy,* 47 NY2d 196, 201 [1979]; *People v Bracey,* 41 NY2d 296, 302 [1977].) Thus, a review of the relevant facts is necessary.

On September 27, 1987, Lisa Reynolds, along with two of her children, aged seven and six, respectively, went to visit her friend and neighbor, Edith Rodriguez. Defendant, who was cohabitating with Reynolds, remained in the apartment, baby-sitting for Reynold's 14-month-old son Ralph, who was called "Chunky"; the boy was clad in a shirt at the time.

The relationship of defendant to the Reynolds family was a close one. Although he had been living with Reynolds for only three or four months, he was responsible for many household duties, and was an active participant in raising and caring for the children. Indeed, Chunky called defendant "dada", while defendant referred to the boy as his son. At the time of the incident herein at issue, defendant was attempting to toilet train Chunky. While Reynolds thought that the child was a bit young for this, she did not interfere with defendant's efforts.

On the night in question, Reynolds was gone approximately 10 to 14 minutes. During this time, Chunky urinated twice. The first time he wet his pants; shortly thereafter he apparently urinated on defendant's foot. Defendant evidently then took the child and, holding him by the hands and feet, immersed him in scalding water in the bathtub for 15 to 60 seconds.[1] The child sustained second degree burns over 30 to 40% of his body, primarily on the rear of his head and neck, his back, buttocks, and thighs; there were, in addition, some burns on the left side of his abdomen as well. It is posited, and

---

1. This evidence was developed by expert testimony. Three of the four experts concluded the child was "immersed" in scalding water, based upon the burn patterns on the boy's body.

accepted for the purposes of this factual recitation, that these front side burns were caused when the boy squirmed in the hot water.[2]

When defendant lifted the child from the tub, he saw that there were burns, and that Chunky's skin seemed to be burned, then started to "melt". He immediately put Vaseline on the burns, in an effort to aid the child. Frightened, he also called Reynolds up from the Rodriguez apartment, telling her that the boy had been burned.

When Reynolds arrived, the child was nude. On the floor, in a puddle, were a pot and broom handle. Reynolds asked defendant what happened. He replied that the boy had knocked over a pot of hot water with a broom handle. Although defendant initially told Reynolds not to call the hospital because it could adversely affect her public assistance if it was learned that he lived with her, she called for an ambulance to take the child to Harlem Hospital when she saw the extent of the burns, which were starting to blister.

The child succumbed eight days later. During this time, defendant visited the child every day, except for the last, on which he was working.

When the police began to investigate the incident, defendant told them that the child had knocked a pot of boiling water off the stove with the broom handle, while he and Reynolds were in the apartment. Reynolds also told the police that she had been in the apartment at the time of the incident. Later, however, both acknowledged that defendant had been alone with the boy when he was burned, and that this first version of the events was false.

It is noteworthy that, prior to the subject incident, defendant never abused any of the children, and, in fact, was described as a loving, though strict, father figure. Moreover, defendant had no prior involvements with the criminal justice system.

Defendant was charged with murder in the second degree, under a theory of recklessness, and manslaughter in the first degree. After a bench trial, the court considered these charges, as well as the lesser offenses of manslaughter in the second degree and criminally negligent homicide. Upon deliberating,

---

2. There was testimony that, shortly before the subject incident, the boiler had been broken and that there had been no hot water; however on the day in question, there was hot water, and the thermostat on the boiler was set at 140 degrees.

the court acquitted defendant of murder, but convicted him of manslaughter in the first degree.

The question on appeal is whether the evidence was sufficient to prove beyond a reasonable doubt that defendant intended to seriously injure the child, and was therefore guilty of manslaughter in the first degree. Where, as here, a defendant's conviction rests exclusively on circumstantial evidence, it must be subjected to strict judicial scrutiny *(People v Way,* 59 NY2d 361, 365 [1983])* and, "the facts from which the inference of defendant's guilt is drawn must be inconsistent with the defendant's innocence and must exclude to a moral certainty every other reasonable hypothesis". *(People v Marin,* 65 NY2d 741, 742 [1985].)* I believe that insofar as the element of intent is concerned, this standard was not met, and defendant should therefore have been convicted of manslaughter in the second degree, which involves recklessness rather than intent.

That said, I note first, that contrary to defendant's claim, the burns the child sustained were consistent only with having been immersed in hot water. However, I am not persuaded that this was done "[w]ith intent to cause serious physical injury" to the boy. (Penal Law § 125.20 [1].) It appears to me that defendant's "conscious objective" (Penal Law § 15.05 [1] [defining "intentionally"]) was to punish the child, not to cause serious injuries which would "create * * * a substantial risk of death, or * * * cause * * * death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." (Penal Law § 10.00 [10].) Indeed, as soon as defendant saw the nature of the child's injuries, and their worsening nature, he made immediate efforts to ameliorate them and called the child's mother for help. This seems to further vitiate the argument that he acted with intent to seriously injure the child. *(Cf., People v Bracey,* 41 NY2d, *supra,* at 301-302 [intent may be inferred by surrounding circumstances].)[3]

---

3. Nor do I consider defendant's false statements to both Reynolds and the police to be necessarily indicative of consciousness of guilt of the crime of which he was convicted. *(See, e.g., People v Marin,* 65 NY2d 741, 746 [1985] [false statements regarding desire to be viewed as a hero]; *People v Moses,* 63 NY2d 299, 308 [1984] [regarding false alibi]; *People v Yazum,* 13 NY2d 302, 304 [1963] [flight as weak evidence of consciousness of guilt]; *cf., People v Sims,* 110 AD2d 214, 223-224 [2d Dept 1985], *lv denied* 67 NY2d 657 [1986].) Rather, his statements may have been due to moral, as opposed to legal consciousness of guilt, and the result of self-recrimination for having unintentionally, albeit severely, injured the toddler he called "my son", and the effect it would have on his "spousal" relationship.

This is not to suggest that defendant's conduct, which had such tragic results, is excusable. However, I believe it to fall squarely within the lesser charge of manslaughter in the second degree, because the proof is that defendant "recklessly cause[d] the death of [the child]" (Penal Law § 125.15 [1]). It would appear that defendant's conduct involved an "aware-[ness] of and conscious * * * disregard * * * [of] a substantial and unjustifiable risk that such result [would] occur or that such circumstances exist[ed] [and that] [t]he risk [was] of such a nature and degree that disregard thereof constitute[d] a gross deviation from the standard of conduct that a reasonable person would observe in the situation." (Penal Law § 15.05 [3] [defining "recklessly"].)

Finally, the isolated nature of this incident supports a theory of recklessness, rather than intent. *(Cf., People v Engler,* 150 AD2d 827, 829-830 [3d Dept 1989], *lv denied* 75 NY2d 770 [1989] [prior to beating the child to death, defendant's abusive conduct included, *inter alia,* immersing child in scalding water, and breaking child's arm during a beating]; *People v Sims,* 110 AD2d 214, 222-224 [2d Dept 1985] [upholding conviction of assault in the first degree where defendant intentionally immersed her two-year-old daughter in a tub of scalding water for at least 20 to 30 seconds; considerable evidence of abuse included admissions of beatings which were so severe that substantial scars resulted]; *accord, People v Bruen,* 119 AD2d 685, 686 [2d Dept 1986]; *see also, People v Rumble,* 58 AD2d 900, 902 [3d Dept 1977], *affd* 45 NY2d 879 [1978] [intentional murder where defendant poured gasoline on his mother and set her on fire].) Here, defendant had *no* prior history of assaultive or abusive conduct; to the contrary, he was characterized as a loving, devoted parent.