# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**48**
**KA 14-00110**
PRESENT: SMITH, J.P., CARNI, LINDLEY, AND DEJOSEPH, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                                    MEMORANDUM AND ORDER

DYLAN SCHUMAKER, DEFENDANT-APPELLANT.

---

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (TIMOTHY P. MURPHY OF COUNSEL), FOR DEFENDANT-APPELLANT.

DYLAN SCHUMAKER, DEFENDANT-APPELLANT PRO SE.

FRANK A. SEDITA, III, DISTRICT ATTORNEY, BUFFALO (DAVID A. HERATY OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Erie County (M. William Boller, A.J.), rendered January 10, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously modified as a matter of discretion in the interest of justice by reducing the sentence imposed to an indeterminate term of incarceration of 18 years to life, and as modified the judgment is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]), arising from the death of his girlfriend's 23-month-old son. Defendant contends, inter alia, that the evidence is not legally sufficient to support the conviction and that the verdict is against the weight of the evidence. Although he concedes that his actions caused the victim's death, defendant challenges the sufficiency and weight of the evidence with respect to whether he intentionally caused the victim's death. We reject those challenges.

It is well settled that "[t]he standard for reviewing the legal sufficiency of evidence in a criminal case is whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' " (*People v Contes*, 60 NY2d 620, 621, quoting *Jackson v Virginia*, 443 US 307, 319, *reh denied* 444 US 890). Consequently, we must "determine whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the

evidence at trial" (*People v Bleakley*, 69 NY2d 490, 495).

Here, the testimony of the Medical Examiner established that the victim sustained ruptured blood vessels in his left ear and near his right eye, hemorrhages in his retina and perioptic nerve, and subdural and subarachnoid hemorrhaging. The Medical Examiner testified that the victim also had numerous contusions and abrasions on multiple areas of his torso, buttocks, scalp, face and neck. The Medical Examiner opined that the cause of the victim's death was "diffuse axonal injury," which resulted from shearing forces within the child's brain caused by his head whipping violently back and forth, and that such a result is consistent with the blows that defendant admitted inflicting upon the child. The Medical Examiner testified that the child's injuries were not consistent with a slip and fall as defendant testified occurred, but instead were the result of "multiple impacts." Other evidence, including text messages that defendant sent and his trial testimony, established that the child was initially injured before 5:00 p.m., and that defendant inflicted further injuries upon him over a period of several hours during the evening. Defendant admitted hitting the victim several times, including backhanded smacks to his face, and slamming his head on the ground while changing a diaper, all of which culminated in defendant placing the victim on a bed with a pillow over him and repeatedly punching him in the head. The Medical Examiner testified that the "diffuse axonal injury" caused the victim's death, and that the victim had "no prolonged survival [after he sustained that injury, but rather he] died soon thereafter, shortly thereafter."

The evidence also established that defendant frequently stopped attacking the victim while he sent an ongoing series of text messages. At approximately 5:00 p.m., he told the victim's mother that the victim had fallen, but for the next several hours he texted with her on that and other topics, flirted with a different young woman, and attempted to sell synthetic marihuana to a third person. Thus, the evidence is sufficient to establish that defendant spent the evening intermittently attacking the 23-month-old child while engaging in commercial and social activities, and then placed the victim on a bed and punched him repeatedly in the head through a pillow. "A jury is entitled to infer that a defendant intended the natural and probable consequences of his acts" (*People v Bueno*, 18 NY3d 160, 169; *see People v Hayes*, 163 AD2d 165, 166, *affd* 78 NY2d 876; *People v Watson*, 269 AD2d 755, 756, *lv denied* 95 NY2d 806). We conclude that the evidence is legally sufficient to establish that defendant intended to cause the death of the victim (*see generally Bleakley*, 69 NY2d at 495).

Furthermore, it is also well settled that, "in conducting its weight of the evidence review, a court must consider the elements of the crime, for even if the prosecution's witnesses were credible their testimony must prove the elements of the crime beyond a reasonable doubt" (*People v Danielson*, 9 NY3d 342, 349). Here, viewing the evidence in light of the elements of the crime of murder as charged to the jury (*see id.*), we further conclude that the verdict is not

against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).  We note that, "[a]lthough defendant testified that he did not intend to kill [the] victim, the [jury] was free to reject that self-serving testimony" (*People v Simcoe*, 75 AD3d 1107, 1109, *lv denied* 15 NY3d 924).

Defendant further contends that Supreme Court erred in denying his *Batson* objection to the prosecutor's use of peremptory challenges to exclude two African-American prospective jurors.  Defendant failed to preserve for our review that part of his contention concerning the court's procedure for determining his *Batson* objection (*see People v Collins*, 63 AD3d 1609, 1610, *lv denied* 13 NY3d 795; *People v Parker*, 304 AD2d 146, 156, *lv denied* 100 NY2d 585).  We decline to exercise our power to review that part of defendant's contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]).

We reject those parts of defendant's *Batson* contention that are preserved for our review.  We conclude that the court properly determined that the prosecutor's explanations for exercising peremptory challenges with respect to the two prospective jurors were race-neutral and not pretextual when it rejected defendant's *Batson* objections concerning those two prospective jurors (*see generally People v Smocum*, 99 NY2d 418, 422).  The prosecutor challenged one of the prospective jurors based on her memberships in religious and human rights organizations that the prosecutor felt made her more sympathetic to defendant (*see People v Page*, 105 AD3d 1380, 1381, *lv denied* 23 NY3d 1023; *People v Wilson*, 43 AD3d 1409, 1411, *lv denied* 9 NY3d 994), and she challenged the other on the ground that the prospective juror's lack of life experiences and decision-making responsibilities made her a less-qualified candidate for jury service (*see People v Hinds*, 270 AD2d 891, 892, *lv denied* 95 NY2d 964).  Finally, the prosecutor established that she struck other prospective jurors who were not members of a suspect class for those same reasons, and the court therefore properly concluded that the prosecutor's explanations were not pretextual (*see People v Simmons*, 79 NY2d 1013, 1015; *cf. People v Mallory*, 121 AD3d 1566, 1568; *see generally People v Lawrence*, 23 AD3d 1039, 1039, *lv denied* 6 NY3d 835).

We reject defendant's further contention that he was denied effective assistance of counsel.  Defendant's contention that he was deprived of effective assistance of counsel by his attorney's failure to pursue a defense of extreme emotional disturbance is without merit.  That defense requires that a defendant establish that he "suffered from a mental infirmity not rising to the level of insanity at the time of the homicide, typically manifested by a loss of self-control" (*People v Roche*, 98 NY2d 70, 75; *see People v Wall*, 48 AD3d 1107, 1107, *lv denied* 11 NY3d 742).  Here, "[w]e conclude that proof of the objective element [of the defense] is lacking . . . , inasmuch as defendant's behavior immediately before and after the killing was inconsistent with the loss of control associated with the affirmative defense" (*People v Mohamud*, 115 AD3d 1227, 1228, *lv denied* 23 NY3d 965 [internal quotation marks omitted]; *see People v Jarvis*, 60 AD3d 1478, 1479, *lv denied* 12 NY3d 916).  It is well settled that "[t]here can be

no denial of effective assistance of trial counsel arising from counsel's failure to 'make a motion or argument that has little or no chance of success' " (*People v Caban*, 5 NY3d 143, 152, quoting *People v Stultz*, 2 NY3d 277, 287, *rearg denied* 3 NY3d 702).  Furthermore, in order "[t]o prevail on a claim of ineffective assistance of counsel, it is incumbent on defendant to demonstrate the absence of strategic or other legitimate explanations" for defense counsel's allegedly deficient conduct (*People v Rivera*, 71 NY2d 705, 709; *see People v Benevento*, 91 NY2d 708, 712), and defendant failed to make such a showing here.

We likewise reject defendant's contention that he was denied effective assistance of counsel based on his attorney's failure to seek a *Dunaway* hearing " 'where, as here, such [a request] was potentially futile' " (*People v Smith*, 128 AD3d 1434, 1434-1435, *lv denied* 26 NY3d 1011).  Similarly, there is no evidence in the record that the Sheriff's detectives who questioned defendant used any ploy that might constitute a "highly coercive deception[]" that would justify suppression of his statements (*People v Thomas*, 22 NY3d 629, 642; *see People v Moore*, 132 AD3d 496, 496-497; *see generally People v Knapp*, 124 AD3d 36, 41-42), and thus defendant was not denied effective assistance of counsel by his trial attorney's failure to move to suppress his statements on that ground.  Defendant's contention in his pro se supplemental brief that trial counsel was ineffective in failing to challenge prosecutorial misconduct occurring in the grand jury is baseless, inasmuch as there is no evidence that trial counsel had access to the grand jury minutes.  We have considered defendant's remaining contentions in his main and pro se supplemental briefs with respect to the alleged ineffective assistance of counsel and, viewing the evidence, the law and the circumstances of this case, in totality and as of the time of the representation, we conclude that defendant received meaningful representation (*see generally People v Baldi*, 54 NY2d 137, 147).

Defendant failed to preserve for our review his contention that the investigators who questioned him should have advised him of his *Miranda* rights a second time, before he began to write out his statement (*see People v Rodriguez*, 70 AD3d 729, 730, *lv denied* 14 NY3d 892; *People v Kemp*, 266 AD2d 887, 887, *lv denied* 94 NY2d 921).  In any event, that contention lacks merit.  Where " 'a person in police custody has been issued *Miranda* warnings and voluntarily and intelligently waives those rights, it is not necessary to repeat the warnings prior to subsequent questioning within a reasonable time thereafter, [where, as here,] the custody [was] continuous' " (*People v Johnson*, 20 AD3d 939, 939, *lv denied* 5 NY3d 853; *see People v Peterkin*, 89 AD3d 1455, 1455-1456, *lv denied* 18 NY3d 885).

Defendant waived his present contention that the court erred, following a *Ventimiglia* hearing, in allowing the prosecutor to present evidence of a prior bad act, i.e., an altercation he had with the victim's mother the day before this incident, inasmuch as he consented to the admission of that evidence (*see People v McCain*, 307 AD2d 764, 765, *lv denied* 100 NY2d 622; *see generally People v Carr*, 267 AD2d

1062, 1063, *lv denied* 95 NY2d 833).

We agree with defendant, however, that the sentence imposed is unduly harsh and severe in light of defendant's youth and lack of parental guidance, his lack of prior criminal convictions, and his mental health issues.  Thus, we modify the judgment by reducing the sentence, as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [b]), to an indeterminate term of incarceration of 18 years to life.

Entered:  February 11, 2016                    Frances E. Cafarell
                                               Clerk of the Court