ADOLPH GUTIERREZ, INDIVIDUALLY, AND ADOLPH GUTIERREZ, AS GUARDIAN AD LITEM FOR JACOB GUTIERREZ, A MINOR CHILD, APPELLANT, v. SUTTON VENDING SERVICE, INC., LAMON COLLINS, DBA LAMON COLLINS UNION 76 SERVICE STATION AND LAMON COLLINS, INDIVIDUALLY, RESPONDENTS.

No. 4780

December 7, 1964                    397 P.2d 3

*Harry E. Claiborne,* and *John Manzonie,* of Las Vegas, for Appellant.

*Singleton and DeLanoy* and *Rex A. Jemison,* of Las Vegas, for Respondent Sutton Vending Service, Inc.

*Morse & Graves,* and *Lee R. Rose,* of Las Vegas, for Respondent Lamon Collins Union 76 Service Station, and Lamon Collins, individually.

564

## OPINION

By the Court, THOMPSON, J.:

On October 12, 1961, eight year old Jacob Gutierrez went to a service station to get a candy bar from an automatic vending machine. He put his nickel in the slot, pulled the knob, and the machine toppled over upon him. He was immediately taken to the hospital where a two and a half inch laceration above his right eyebrow was sutured and a contusion to his right knee treated. X-rays of his skull and knee were normal. He was released immediately. The hospital bill was $59. About three weeks later Jacob's father, as guardian ad litem, filed a damage suit against the service station operator and the vending machine company, charging negligence and claiming a permanent disability from the accident. The case was finally tried to a jury in December 1963. The record shows that for about one year before the accident Jacob had been taking trumpet lessons and had progressed remarkably well. During the summer preceding the accident he had played trumpet with the Las Vegas Summer Youth Philharmonic Band and was considered the third best of eleven in the trumpet section. His teacher, a professional musician, opined that Jacob had professional ability and a bright musical future. Following the accident Jacob engaged in the normal activities of boys of his age, and continued with his trumpet lessons. However, in March 1963 he discontinued the lessons, primarily, he said, because of headaches experienced when blowing the trumpet. Eight months before he had been sent to a neurologist. There is some doubt as to whether the consultation was for treatment or to obtain a specialist for trial testimony. In any event, the neurologist testified that, though Jacob may have sustained some brain damage, he had fully recovered and would

experience no future difficulty. When pressed, the doctor reduced his prognosis to a percentage evaluation, stating "I would say the chances of there being further difficulty from this injury to be in the region of 2 to 3 percent which is a very small percentage." The doctor also testified that the slight brain damage could have affected Jacob's ability to blow the trumpet because one with a headache cannot blow hard. As the slight brain damage was no longer ascertainable in September 1962, the doctor concluded his direct testimony, stating "It leaves you with a question, does he have a headache." The lower court, apparently believing that Jacob's inability to play the trumpet was not shown to have been caused by an injury sustained in the accident, instructed the jury to disregard all evidence received on that subject. The jury returned its verdict for the plaintiff and awarded $200 as damages. The plaintiff's motion for a new trial was denied, and this appeal followed.

The main contention in this court is that the lower court should not have so instructed the jury.[1] The appellant's theme is that, had the jury been permitted to consider such evidence, damages may have been allowed for future pain and suffering and for an impaired earning capacity. The lower court's ruling was justified. Jacob was not permanently injured, nor did he suffer a disability that would be with him for some period of time after the trial. The medical witness testified that Jacob had fully recovered from his head injury more than a year before trial. No objective or clinical signs of damage remained. Though Jacob complained that his headaches continued to the time of trial, his testimony is not competent to allow damages for future pain and suffering. Curti v. Franceschi, 60 Nev. 422, 111 P.2d 53, 112 P.2d 819. Where, as here, the disability

---

[1]Appellant's brief also urged that the verdict should be set aside and a new trial ordered because it was in an amount equal to the special damages and did not allow for general damages. He abandoned this contention during oral argument because the $200 award did, in fact, exceed the special damages incurred.

is subjective in character (headaches, etc.) and not demonstrable to others, expert testimony that the disability will probably continue is needed before an award for future damage is permissible. Curti v. Franceschi, supra. A guess that Jacob's head injury could have affected his ability to play the trumpet, a slight possibility that it might continue to bother him, a 2 or 3 percent chance, does not meet the legal standard. Compensatory damages rest upon proof that they are the natural and probable result of the accident in question. Had Jacob's disability been readily observable by the jurors, objective in nature rather than subjective, an award for future pain and suffering might have been permitted without supporting medical opinion evidence. Sierra Pacific v. Anderson, 77 Nev. 68, 358 P.2d 892; Annot., 135 A.L.R. 516. However, his claim of injury is not of this character, and the rule announced in Curti v. Franceschi, supra, controls. What we have said as to the legal insufficiency of the evidence to show future pain and suffering applies with equal force to Jacob's claim that his earning capacity was impaired. Of course, additional barriers exist to block this item of claimed damage, but need not now be expressed.

Affirmed.

BADT, C. J., and MCNAMEE, J., concur.