TIMOTHY STAHR GALLOWAY, as Guardian Ad Litem
for TIMOTHY CURTIS GALLOWAY, Appellant, v.
McDONALDS RESTAURANTS OF NEVADA, INC., a
Nevada Corporation, Respondent.

No. 15607

December 5, 1986                                728 P.2d 826

*Gang* and *Berkley,* Las Vegas, for Appellant.

*Barker, Gillock & Perry,* Las Vegas, and *Michael A. Koning,* Las Vegas, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

On September 14, 1981, Timothy Stahr Galloway entered Southern Nevada Memorial Hospital in Las Vegas with his three-and-a-half-year-old son, Timothy Curtis, who had somehow received serious burns on his right buttocks, calf and thigh. In attempting to explain how the boy had been so badly burned, Galloway told the admitting physician that, two days previously, he had placed the child "on a hot metal merry-go-round." Subsequent to his son's hospital care, the senior Galloway, as the

child's guardian ad litem, sued McDonalds Restaurants of Nevada for damages, alleging that the burns occurred when his son climbed onto a Mayor McCheese Whirl, a type of merry-go-round in a playground at a McDonalds "fast-food" restaurant.

At trial, Galloway repudiated the explanation he originally had given to the admitting physician at Southern Nevada Memorial Hospital, testifying instead that he was "absolutely positive" he had not placed the child on the "Whirl," because "I wouldn't put my son on a hot merry-go-round at all." Nonetheless, Galloway acknowledged that the boy had sustained no burns on his hands or knees. Thus, nothing indicated that the child had touched the allegedly hot metal with any part of his body while climbing onto the "Whirl." According to Galloway's trial court testimony, after the boy seated himself on the "Whirl," Galloway pushed the "Whirl" two to three revolutions. Then, he claimed, his son screamed "real loud" and he picked up the child. "I grabbed the handle real fast," he said, "and I was irritated 'cause I thought he was scared of the ride. . . . I stopped the ride real fast. I said, 'Timmy, what's wrong with you,' 'cause I was irritated 'cause I thought he was scared."

According to Galloway, after the boy was burned, he first sought treatment for him at the Desert Springs Hospital, and then returned to McDonalds to report the accident, which he claimed had occurred on their playground equipment earlier that same day. After considering Galloway's current story and other evidence, including his original report to Southern Nevada Memorial Hospital, the jury returned a verdict in favor of McDonalds, and a judgment was entered accordingly.

In this appeal, Galloway contends the trial court erred (1) by admitting testimony of the absence of prior accidents at the McDonalds playground, and (2) by refusing to give the jury an instruction on contributory negligence designed by his counsel. As hereinafter discussed, we perceive no error either in admitting the challenged evidence or in refusing to give the submitted jury instruction. We therefore affirm the judgment.

## THE ABSENCE OF PRIOR ACCIDENTS

At trial, McDonalds introduced testimony regarding the absence of prior accidents of the kind alleged by Galloway. Appellant objected to the admission of such evidence but the trial court overruled the objection. The operations manager then testified that, to her knowledge, based on five years of employment with McDonalds, no other burns had been reported to have occurred on the "Whirl." "I've never had any cases like that before, in my entire career with McDonalds," she stated. She explained no signs had been posted warning of any potential

problem with the heated metal in the Las Vegas sun, as she did not believe an accidental burn could have happened as the father now claimed—*i.e.*, by climbing upon the merry-go-round without assistance from the father.[1]

Appellant argues the court erred in admitting evidence that no reports of similar accidents had been received, because of its tendency to confuse and prejudice the jury. McDonalds contends the testimony of its operations manager was relevant to show that it had no notice or knowledge that the metal "Whirl" would be a dangerous condition. We agree with McDonalds.

"The general rule is that evidence of the lack of previous accidents under similar circumstances is admissible to prove that no dangerous conditions existed and that the injury was not reasonably forseeable." Baker v. Lane Cty., 586 P.2d 114, 118 (Or.App. 1978). Professor McCormick's treatise on evidence states: "A large number of cases recognize that lack of other accidents may be admissible to show . . . want of knowledge (or of grounds to realize) the danger." C. McCormick, *McCormick on Evidence,* 591-92 (E. Cleary 3rd ed. 1984). Indeed, McCormick concludes that

> if proof of similar accidents is admissible in the judge's discretion to show . . . the defendant knew or should have known of the danger, then evidence of the absence of accidents during a period of similar exposure and experience likewise would be receivable to show that these facts do not exist in the case at bar.

*Id.* at 590.

We have previously determined that evidence of prior accidents is admissible to show notice of a dangerous condition. Southern Pacific Co. v. Watkins, 83 Nev. 471, 435 P.2d 498 (1967). Thus, we agree with Professor McCormick and McDonalds that, because prior similar accidents may be admitted to show notice, evidence showing the absence of similar accidents should be deemed admissible to negate such notice.

We are unpersuaded by appellants' argument that such evidence will confuse the jury. The testimony of McDonalds' manager merely showed that, no matter how hot the days have been in Las Vegas, and no matter how many children have played on the merry-go-round, there have never been any other reported cases of burns on the "Whirl." Our review of the record indicates that this evidence was presented in a straight-forward manner and

---

[1]Although there were no signs warning parents of the potential effects of the hot Las Vegas sun on a metal seat, photos were admitted showing a sign warning that "children must be accompanied by an adult" while playing in the McDonalds park.

could not have confused or prejudiced the jury. Further, we believe that, "problems of prejudice and distraction over 'collateral issues' seem much more acute when it comes to proof of other accidents than when evidence of an accident-free history is proffered." *McCormick on Evidence,* at 591.

Accordingly, the district court did not abuse its discretion in admitting evidence showing the absence of prior similar accidents.

## JURY INSTRUCTION

Appellants contend the district court erred by giving Jury Instruction 9-C. There is no dispute that Jury Instruction 9-C embodies the law in Nevada as to the duty of landowners. That instruction states:

> An owner or occupant of land must exercise ordinary care and prudence to render the premises reasonably safe for the visit of a person invited on his premises for business purposes. An owner or occupant of land who knows, or in the exercise of reasonable care should know, of their dangerous and unsafe condition, and who invites others to enter upon the property, owes to such invitees a duty to warn them of the danger, where the peril is hidden, latent, or concealed, or the invitees are without knowledge thereof.
>
> On the other hand, if the dangerous and unsafe condition is obvious, ordinary care does not require warning from an owner or occupant of land.

Because the instruction states the duty of a landowner in this type of action, we perceive no error by the trial court in giving this instruction. We have previously determined that "an erroneous instruction as to the duty or standard of care owing by one party to the other is substantial error requiring another trial." Otterbeck v. Lamb, 85 Nev. 456, 463, 456 P.2d 855, 860 (1969) (citation omitted). Thus, if the trial court had refused to instruct the jury as to the standard of care owed by McDonalds to this litigant, we would have been constrained to hold that refusal to be error.

Appellant next argues that the trial court erred by not giving his proposed Jury Instruction A, which stated:

> You are instructed that since Timothy Curtis Galloway was a minor under the age of five years at the time of the incident, he was incapable of contributory negligence as a matter of law.

In Quillian v. Mathews, 86 Nev. 200, 467 P.2d 111 (1979), however, we specifically refused to adopt a rigid rule of this nature. In *Quillian,* we determined that the issue of a child's contributory negligence is one of fact "for the jury upon proper instructions unless reasonable minds could come to but one conclusion from the evidence." 86 Nev. at 203, 467 P.2d at 113. In so doing, we stated:

> In our opinion it is not advisable to establish a fixed and arbitrary rule, and we reject the view espoused by the Ohio court in Holborck v. Hamilton Distributing, Inc., supra. We prefer to treat the issue of contributory negligence of a child as a fact issue for the jury upon proper instructions unless reasonable minds could come to but one conclusion from the evidence. This allows for a degree of flexibility in the handling of each case as it comes before the trial court. That court may decide initially whether reasonable minds could believe that the particlular child has the capacity to exercise that degree of care expected of children of the same age, experience and intelligence in similar circumstances. Should the court determine that the child has such capacity, the jury then is to decide whether such care was exercised in the particular case. Should the court rule otherwise, then, of course, the issue of contributory fault would not be submitted for jury resolution. . . .

*Id.*

In sum, we have expressly repudiated any Procrustean rule that, merely because a child has not reached some specified age, he or she is incapable of contributory negligence no matter what the situation, and no matter what the experience or capabilities of the child. Hence, the trial court could not give an instruction announcing to the jury that such is the state of the law in Nevada. "[T]he requested instruction must be consistent with existing law." Beattie v. Thomas, 99 Nev. 579, 583, 668 P.2d 268, 271 (1983) (citation omitted). Thus, the court properly refused to give the instruction.[2]

The judgment of the district court is affirmed.

YOUNG, J. concurs.

SPRINGER, J., concurring:

I write in concurrence because I wish to stress the complete freedom from any prejudicial error to be found in the record of

---

[2]Plaintiff's counsel evidently did not employ any other means to raise the claim that, as to this specific child on these specific facts, the issue of contributory negligence should be foreclosed as a matter of law.

this case. I disagree heartily with the dissent's conjecture that the verdict was the "product of jury confusion." It is clear to me that the jury simply did not believe the father's revised version of the event told at trial, namely that the child climbed up on the hot metal and remained there until he was severely burned. More likely and more believable is the father's first story, told at the hospital, that *he,* the father, placed the child on the device.

From my point of view, the jury could even have believed a more dire version of how the little boy was burned, but this is not the point. The point is that the plaintiff failed to carry the burden of proving to the jury fault on the part of McDonalds, and little more has to be said.

The dissent mentions something about a higher standard of care being required by McDonalds in this case, but the trial judge was not asked to instruct the jury on this point, even if it had some validity. Mention is also made of the amusement device's being an "enticement," but again I see that no instructions were requested by the plaintiff on this point. These questions were not raised, as far as I can determine, in this appeal.

The instruction found objectionable by the dissent is a standard one on occupier's liability, and the instruction could not in any way that I can perceive "invite the jury to speculate."

The dissent finds error in the court's not instructing the jury that the child was incapable of contributory negligence as a matter of law. As pointed out in the majority, there was no attempt under *Quillian* to obtain an adjudication establishing the supposed incapacity of the child. Appellant was certainly not, under our case, entitled to an instruction that all children were conclusively or even presumptively free from contributory negligence.

There are certainly various disparate ways of looking at the facts in this case. One way is that the child innocently climbed aboard the merry-go-round and remained there until he was seriously burned. Another, contrary view is that the child was placed on the device by his father (as the father told medical attendants at the hospital) and was held there until he was seriously burned. The jury could have believed either version and even could have believed that the father burned the child in some other fashion that had no connection at all with McDonalds; for the father, rather clearly, was not believed by the jury.

The real point here is that it really does not matter what the jury believed; they were entitled not to believe anything presented to them. The child and his representatives had the burden of proving to the jury's satisfaction that negligence on the part of McDonald's caused the child's injuries, rather than other means.

I cannot see any possibility that a portion of a general instruction relating to obvious conditions of danger could have "invited

an erroneous analysis of duty to the prejudice of the injured child," or could, even if error, have had any prejudicial effect of any kind.

I have put down these views, as said, to point to the exceptionally error-free nature of the trial of this case. Whether the jury found that there was no evidence to support negligent conduct on the part of McDonalds or that the case was dishonestly contrived by the father, it was certainly justified in concluding that the plaintiff had not sustained the burden of proof.

STEFFEN, J. with whom MOWBRAY, C. J., agrees, dissenting:

I respectfully dissent.

My review of the record convinces me that the defense verdict in this case was in large measure the product of jury confusion over the tort concept of duty. The evidence strongly suggests that the injured child was not burned as a result of climbing up onto the carousel, as represented by the child's father at trial. To the contrary, it appears from a combination of the father's statement to the admitting physician, as reflected in the hospital records, and the application of logical inferences derived from the circumstances of the accident that the child was placed on the hot surface of the carousel by his father. The stage was thus set for the jury to transfer its focus from the breach of duty by McDonalds to a breach of duty by the father. Jury perspective was obscured by an instruction that invited an erroneous analysis of duty to the prejudice of the injured child.

The setting of the incident must be understood to appreciate why the father's conduct did not insulate McDonalds from its duty to its 3½ year old invitee, Timothy. The playground equipment was prominently displayed at the site of the fast food operation on Maryland Parkway to entice young children and their parents into the facility. The playground was colorfully adorned and presented as an inducement to partake of McDonalds' victuals in an environment conducive to contented children. It is thus clear that McDonalds had an elevated duty of care to its minor invitees who were most vulnerable to the enticements of the playground. Crosswhite v. Shelby Operating Corp., 30 S.E.2d 673 (Va. 1944); Grace v. Kumalaa, 386 P.2d 872 (Hawaii 1963); Styer v. City of Reading, 61 A.2d 382 (Pa.1948); Augusta Amusements v. Powell, 92 S.E.2d 720 (Ga.App. 1956); Bronson v. Kansas City, 323 S.W.2d 526 (Mo.App. 1959); Schwartz v. Helms Bakery Limited, 430 P.2d 68 (Cal. 1967).

Assuming the jury concluded that a less than candid father placed Timothy on the carousel, it is necessary to consider the legal significance of such conduct by the father as it relates to

McDonalds' duty to the injured child-invitee. Given the fact that the carousel, unshaded from the sun and bereft of warning, stood beckoning its amusements to tender-aged children, it was arguable foreseeable that a parent might thoughtlessly conclude that McDonalds would not create, maintain or invite the use of a dangerous object of recreational enticement for children. Its alluring and unrestricted presence spoke silently but convincingly of its fitness for use. In any event, McDonalds' duty of extraordinary care to its minor invitees was undiminished by a lack of parental care unless such dereliction was unforeseeable. Landeros v. Flood, 551 P.2d 389 (Cal. 1976). Failure to adequately safeguard invited children from foreseeable acts of parental or third-party negligence in the use of McDonalds' commercial recreational facilities should, as a matter of law, subject McDonalds to liability for injuries to such invitees. *Id.* at 395.

The foregoing predicate leads me to the offending instruction. The jury was instructed on a landowner's duty to invitees in Nevada by Instruction 9-C.[1] That instruction included the following provision:

> On the other hand, if the dangerous and unsafe condition is obvious, ordinary care does not require warning from an owner or occupant of land.

The inclusion of the quoted provision was inappropriate and prejudicial in this case for several reasons. First, I seriously question the provision as a correct statement of the law where the unsafe condition is created and maintained by the landowner as an enticement for use by invitees for the landowner's commercial purposes. Berrum v. Powalisz, 73 Nev. 291, 317 P.2d 1090 (1957). Indeed, at trial McDonalds sought to avoid the consequences of its own inattention by the unbecoming argument that the carousel's superheated condition should have been obvious to the 3½ year old seriously burned infant.[2] Second, as noted

---

[1]The instruction, in its entirety, reads as follows:

An owner or occupant of land must exercise ordinary care and prudence to render the premises reasonably safe for the visit of a person invited on his premises for business purposes. An owner or occupant of land who knows, or in the exercise of reasonable care should know, of their dangerous and unsafe condition, and who invites others to enter upon the property, owes to such invitees a duty to warn them of the danger, where the peril is hidden, latent, or concealed, or the invitees are without knowledge thereof.

On the other hand, if the dangerous and unsafe condition is obvious, ordinary care does not require warning from an owner or occupant of land.

[2]This argument was obviously designed to cover the unlikely prospect of the jury believing that the child climbed onto the carousel without his father's assistance.

previously, I do not believe McDonalds' duty was limited to that of ordinary care when applied to the young children it particularly sought to entice and influence by its recreational facilities. Third, the instruction may have convinced the jury that if the condition were obvious, or should have been obvious to Timothy's father, no liability would attach to McDonalds for the child's injuries. Fourth, I consider it violative of sound public policy to permit a commercial enterprise to attract patrons through means of a dangerous instrumentality of its own making and then disclaim liability for injury on grounds that the hazard was open and obvious. Fifth, the instruction may have invited the jury to speculate regarding an aspect of blame attributable to 3½ year old Timothy for not recognizing and attempting to avoid the danger. In respect of the latter point, I am persuaded that the trial court also erred in refusing to instruct the jury that because of his age, Timothy was incapable of contributory negligence as a matter of law.

As previously observed, McDonalds argued that its own liability to Timothy should have been eliminated by the child's failure to recognize and avoid the hot surface of the carousel. This was improper. As a matter of law, Timothy was incapable of appreciating the hazard presented by the "Whirl." Clark v. Circus-Circus, Inc., 525 F.2d 1328 (9thCir. 1975). As stated in Comment (b) to § 283A of the Second Restatement:

> A child of tender years is not required to conform to the standards of behavior which it is reasonable to expect of an adult. His conduct is to be judged by the standard of behavior to be expected of a child of like age, intelligence, and experience. *A child may be so young as to be manifestly and utterly incapable of exercising any of those qualities of attention, perception, knowledge, experience, intelligence, and judgment which are necessary to enable him to perceive a risk and to realize its unreasonable character . . .* The prevailing view is that in tort cases no [age] limits can be fixed. *Undoubtedly there is a minimum age, probably somewhere in the vicinity of four years, below which negligence can never be found.* (Emphasis added.)

I hardly view as "Procrustean" a realistic acknowledgment in the law that a child under the age of four years is incapable of negligence. A jury should not be permitted to speculate on an issue that reason and experience place outside the realm of speculation.

Instruction 9-C misstated the law and created a strong potential for jury confusion on the issue of McDonalds' duty of care to little Timothy. My brethren in the majority have recognized that "an erroneous instruction as to the duty or standard of care owing

by one party to the other is substantial error requiring another trial." Otterbeck v. Lamb, 85 Nev. 456, 463, 456 P.2d 855, 860 (1969). I agree, and since the standard of care specified in the last paragraph of Instruction 9-C is clearly not the law under the circumstances of this case, a new trial is mandated. I therefore respectfully dissent from the opinion and decision of the majority.