622 A.2d 1365

LINDA MUCHELL, PLAINTIFF, v. V & V, INC., DEFENDANT, THIRTY–PARTY PLAINTIFF, v. DECOR TRENDS INTERNATIONAL, THIRD–PARTY DEFENDANT.

Superior Court of New Jersey
Law Division Essex County

Decided October 23, 1992.

*Louis David Balk* for plaintiff (*Balk, Oxfeld, Mandell & Cohen*, attorneys).

*Brian C. Harris* for third party plaintiffs (*Braff, Harris & Sukoneck*, attorneys).

*Cindy L. Thompson* for third party defendants (*Edward P. Papalia, Jr.*, attorney).

WALLS, J.S.C.

By its present motion for a new trial, third party defendant, Decor Trends International, hereinafter known as D.T., provokes this question:

**Was the apparent testing-examination by the jury of a physical item of evidence, an aisle directory exemplar, improper and unfairly prejudicial to the defendant and a fair trial?**

Research of New Jersey case law indicates that to be an apparently novel inquiry in our jurisdiction.

This trial involved a claim by the plaintiff who, while shopping at a Foodtown Supermarket on November 5, 1986, was struck by a falling overhead aisle directory. Plaintiff brought a claim for resulting damages against defendant supermarket owner and defendant Decor Trends which had designed and installed such directories. All claims were settled by both defendants with the plaintiff before trial. Thereafter, defendants, by way of jury trial, sought the resolution of proportionate liability for the cause of the accident, which had been the subject of their mutual cross-claims. The trial jury found D.T. to be completely responsible and exculpated the store owner, V & V Inc.

At trial, D.T.'s counsel engaged the store's engineering expert in extensive cross-examination. During such, the expert was requested by counsel to perform an experiment on the overhead aisle directory exemplar which was in evidence. Counsel inquired of the expert if he could separate the sign from its moorings. He complied by manually—and easily—pulling the sign from its base.

Before the physical evidence was prepared for submission to the deliberating jury, D.T.'s lawyer urged that another, an "untested" aisle sign also be sent to the jury. It was permitted as additional evidence over the objection of V & V.

After the return of the verdict, D.T.'s counsel observed that the "untested" aisle directory's pole had been pulled from its base. She objected to this alleged improper experiment and the instant motion has followed.

Although no reported case in our jurisdiction directly addresses the scope of permissible juror experimentation, our Supreme Court has previously considered an analogous situation. *cf. Titus v. State*, 49 *N.J.L.* 36, 7 *A.* 621 (Sup.Ct.1886). *Titus* was a capital criminal case wherein defendant was charged with rape and felony murder. The victim's clothes and a wooden platform had been sent to the jury as an aid to its deliberation. The jurors obtained a magnifying glass surrepti-

tiously and compared the wood fibers on the victim's clothing with those of the platform.

At trial, the State had contended the victim was thrown from the platform to her death. The State's expert witness had testified that he had examined the wood fibers and concluded that those found on the victim's clothing matched the wooden platform's. The *Titus* Court in upholding the jurors' experiment reasoned:

> All that the [jury] did, or could do by the employment of the lens was to find that the fibers in the dress corresponded in all respects with those of the platform and that perfect correspondence had been proved by an accomplished expert who was a witness at the trial and had made a microscopic examination of them. The entire identity of the appearance of these woody filaments was an undisputed fact in the case, and the jury therefore knew such fact as well before making the test as they did afterwards. (*Ibid.* at 47 [7 *A.* 621]).

The court concluded that although the jurors' use of the magnifying glass was irregular, defendant's conviction should stand, because the experiment was not prejudicial. Although the court suggested that if there was conflicting testimony regarding the wood fibers the motion may have assumed a different posture, the jury's conduct was permissible because it was only a reenactment of what had been observed in open court.

■ In *Panko v. Flintkote Co.*, 7 *N.J.* 55, 80 *A.*2d 302 (1951), our Supreme Court outlined the criteria for determining when a new trial is warranted because of alleged improper juror conduct. The plaintiff had been injured while washing windows because of an alleged improperly hung temporary wire on the side of a building. Contested juror misconduct flowed from a juror's relative who had obtained information regarding the party defendant's liability insurance. Specifically, the relative had visited the juror on the trial's second evening and called defendant's president from that juror's home inquiring into the availability of defendant's liability insurance. The Court overturned the verdict and observed:

> It is well settled that the test for determining whether a new trial will be granted because of the misconduct of jurors or the intrusion of irregular

influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner *inconsistent* with the legal proofs and the court's charge. (emphasis supplied), (*Ibid.* at 61 [80 *A.*2d 302]).

The rationale underlying the rule is clear: if jurors are charged with the affirmative obligation to objectively evaluate evidence, their experimentation with such evidence, provided it is consistent with the legal proofs adduced at trial, is appropriate.

Indeed, several jurisdictions which have addressed the issue of permissible juror experimentation have generally concluded that recreation or testing of testimony adduced at trial on objective evidence items is acceptable. See Annotation, *Propriety of Juror's Tests or Experiments in Jury Room*, 31 *A.L.R.4th* 566, Secs. 3 and 14 (1984) (collecting cases).

Since the function of the jury is to examine and evaluate the proper evidence produced in the case, and the practice in many jurisdictions permits and encourages the introduction into the jury room of various objective items of evidence, if the acts complained of as tests or experiments amounted merely to an *examination* and *evaluation* of such evidence, the courts have generally held that no new evidence was received and no impropriety resulted. ((emphasis supplied) (*Ibid.* at 571)).

In *Geo. C. Christopher & Son, Inc. v. Kansas Paint & Color Co.*, 215 *Kan.* 185, 523 *P.*2d 709, *reh. den.* 215 *Kan.* 510, 525 *P.*2d 626 (Kan.1974), the Kansas Supreme Court addressed a factual complex similar to this present matter. *Christopher* was a breach of implied warranty case arising out of defendant's alleged failure to furnish a suitable paint to prime steel. At trial, plaintiff's expert examined defendant's exhibit in open court.[1] The expert scraped the paint primer from the exemplar with a knife to test its adhesive quality and concluded that the paint was inadequate. Both the plaintiff's and defendant's paint panel exemplars were submitted into the jury room during its deliberation. The jury foreman scraped the plaintiff's paint sample exhibit in a duplication of the expert's test performed in the courtroom and discussed the results with the other jurors. The Court held:

---

[1] Defendant's exhibit was a steel panel which was painted in its laboratory with the disputed primer paint.

In the case at bar, the jurors duplicated tests in the courtroom.

. . . .

The conduct of the jurors in this case passes the test ... in that they did not stray beyond the confines of the evidence presented to them with their tests, and it also passes the test ... because the purpose of the[ir] test was to check the validity of evidence presented in open court. An experiment or demonstration is proper when conducted by the jury with the use of exhibits properly submitted to it for the purpose of testing the truth of statements made by witnesses or *duplicating* tests made by witnesses in open court. ((emphasis supplied) (*Ibid.* at 721)).

The Court's reasoning is unequivocal that jurors have not considered extraneous evidence when they duplicate tests conducted in open court during their deliberations.

The *Christopher* Court's reasoning and the implicit rationale of *Titus* and *Panko* are dispositive of the issue presented here. *N.J.Ct.R.* 1:8–8 explicitly permits the introduction, to the jury room, of papers, exhibits and other items proffered into evidence at trial. If the underlying reason for this process is to remain viable—permitting jurors to examine and evaluate objective items in their role as fact finders—the conduct at issue in the instant matter should not be disencouraged and made the basis for overturning a verdict.

D.T.'s counsel offers two principal cases in support of her motion which are inapposite. *Brandimarte v. Greene*, 37 *N.J.* 557, 182 *A.*2d 562 (1962), involved the jury's exposure to information regarding defendant's insurance coverage. Because of our jurisdiction's prophylactic policy to exclude references to a party's insurance capability, *Brandimarte* represents an example of an egregious extraneous influence on the jury's deliberative process. *Brandimarte* is not relevant because, here, the jurors were not subject to any extraneous influences separate from the proofs produced at trial.

The second case advanced by D.T. involved a juror's intentional non-disclosure of information on *voir dire*. *Wright v. Bernstein*, 23 *N.J.* 284, 129 *A.*2d 19 (1957). Therein, the Court determined that a party's right to exercise a peremptory chal-

lenge was violated because of the juror's non-disclosure. That circumstance was not present in our case.

Here, the jurors have conducted an experiment consistent with the legal proofs adduced at trial. The jurors' disengagement of the aisle directory was simply a reproduction of an experiment conducted in open court at the insistence of the allegedly aggrieved party. This jury's actions did not constitute the receipt of extraneous evidence and were appropriate. Decor Trends' motion for new trial is hereby denied.

An appropriate form of order should be submitted by V & V's counsel.