*1007
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 Philip Hazelwood (“Hazelwood”) is a part-time traffic hearing officer and retired California Highway Patrol officer from Ala-meda County, California. He was a regular patron of Harrah’s Club of Reno where he played keno with his friend Frank Ivaldi (“Ivaldi”). The two were acquainted with several Harrah’s employees.
 

 On June 9, 1990, Hazelwood and Ivaldi were at Harrah’s Club as participants in a keno tournament. While waiting for a keno tournament dinner, Hazelwood noticed that a keno game being played was delayed, and from experience he knew that someone had won the game. Hazelwood confirmed this with keno supervisor James Eto (“Eto”), who told Hazelwood that a $20,000 ticket had not been presented for payment. According to Ivaldi, Hazelwood then asked for and received a draw card
 
 [1]
 
 from Eto. Eto also gave Hazelwood permission to search for the discarded ticket in the trash. Eto did not inform Hazelwood that what he was doing might be wrong. Hazelwood took the trash bag to his room, found the ticket, and returned to the keno area to inform Eto and obtain payment of $20,000.
 

 Eto began to follow Harrah’s procedures for confirmation of the ticket and payment by calling Tom McDonald (“McDonald”), surveillance supervisor on duty. McDonald refused to sign off on the ticket due to this unusual situation which apparently no one had previously encountered. Jim Bob Graham (“Graham”), Harrah’s Club keno manager, was informed by another Harrah’s Club employee, Mike Hunt (“Hunt”), that Hazelwood had found a ticket and presented it for payment. After considerable discussion, The Harrah’s Club employees decided that the Gaming Control Board should be called. According to NRS 463.362, whenever a dispute occurs concerning a payment exceeding $500, the Gaming Control Board must be called.
 
 [2]
 

 Hunt, McDonald and Wing Lou of the surveillance department asked Hazelwood to accompany them to the keno manager’s
 
 *1008
 
 office. Hazelwood asked if Ivaldi could come as well and was told he could. Hazelwood testified that on the way to the office, Hunt told him it was a crime for someone to cash a ticket for which he had not paid.
 

 Hazelwood claimed that once inside the manager’s office, he “knew” he could not leave. Hunt told Hazelwood that he had been instructed by the Gaming Control Board to inform Hazel-wood that he would not be paid for the ticket since he had not purchased it. Hazelwood asked for the ticket and was refused. Hunt then made a phone call and shortly thereafter three agents from the Gaming Control Board arrived.
 

 According to Harrah’s, Hazelwood went to another room with the agents and no employees of Harrah’s accompanied them or were privy to the ensuing conversation. The agents read Hazelwood his constitutional rights. One of the agents, John Dickenson (“Dickenson”), informed Hazelwood that in order to receive winnings from a gambling game, it was necessary to purchase a ticket. He also informed him that in Nevada it is unlawful to claim, collect, or attempt to collect a wager with the intent to commit fraud.
 
 [3]
 

 Hazelwood refused to answer any questions until he had the opportunity to speak with a lawyer. Hazelwood claimed that he never demanded payment for the ticket. He asked if he was free to leave and Dickenson responded that he was, but encouraged Hazelwood to stay and resolve the matter. Another agent, Dean Saderup, testified that Hazelwood was not free to leave until he had been read his rights.
 

 The three agents decided to refer the matter to the district attorney without the participation of any Harrah’s employees. One of the agents, Fred Sayre, testified that he was not informed of Eto’s comments to Hazelwood about the lost ticket. However, Dickenson testified that had he been informed of Eto’s actions, he still would have submitted a report to the district attorney.
 

 On June 15, 1990, Hazelwood received a letter from Dicken-son informing him that his complaint against Harrah’s had been investigated and was denied. However, Hazelwood had never filed a complaint. After receiving the letter, Hazelwood contacted his attorney who responded to Dickenson’s letter.
 

 Shortly thereafter, Hazelwood filed a complaint against Har-rah’s claiming false imprisonment, defamation, negligence and
 
 *1009
 
 negligent misrepresentation. Harrah’s answered with fourteen affirmative defenses including statutory immunity from civil liability.
 

 On December 7, 1990, two police officers visited Hazelwood’s home to inform him that they had “a felony warrant for [his] arrest out of Nevada.” Hazelwood turned himself in and was booked in Reno on December 11, 1990. The charges were dismissed over a year later.
 

 The jury returned a general verdict for Hazelwood, awarding $425,000 plus costs and prejudgment interest. Harrah’s filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial, on the grounds that Hazelwood had failed to prove essential elements of his claims of defamation, false imprisonment, negligence and negligent misrepresentation, arid Harrah’s had proved essential elements of its affirmative defenses including statutory immunity from civil liability.
 

 The district court granted Harrah’s motion for judgment notwithstanding the verdict as to the defamation claim, finding that the requisite publication was not present. However, the court denied the motion as to false imprisonment, finding that Harrah’s was not entitled to immunity under NRS 465.101(2). The court also denied Harrah’s motion as to negligent misrepresentation and negligence. The court granted Harrah’s motion for a new trial on damages, finding that the verdict was apparently based on passion and prejudice. However, the court provided Hazelwood with the option of accepting a remittitur in the amount of $200,000. The court also struck the award of prejudgment interest on the grounds that the verdict failed to distinguish between past and future damages.
 

 Harrah’s now appeals the district court’s denial of judgment notwithstanding the verdict as to false imprisonment, negligence and negligent misrepresentation. Hazelwood appeals the district court’s order of remittitur or, in the alternative, a new trial on the issue of damages, and the striking of prejudgment interest. Hazel-wood does not appeal the district court’s order for judgment notwithstanding the verdict as to defamation.
 

 DISCUSSION
 

 The district court did not err in concluding that the jury verdict was based in part on passion and prejudice and in reducing the verdict and granting a new trial on the issue of damages.
 

 This court has stated that in actions for damages in which the law has provided no legal rule of measurement, it is the jury’s
 
 *1010
 
 responsibility to determine the amount to be allowed. Stackiewicz v. Nissan Motor Corp., 100 Nev. 443, 686 P.2d 925 (1984). A court is not justified in granting a new trial on the grounds of excessive damages unless the verdict is “so flagrantly improper as to indicate passion, prejudice or corruption in the jury.”
 
 Id.
 
 at 454, 686 P.2d at 932. The court may not invade the province of the jury by arbitrarily substituting what the court feels is a more suitable sum.
 
 Id.
 
 at 455, 686 P.2d at 932. The mere fact that a verdict is large is not itself indicative of passion and prejudice.
 
 Id.
 

 However, when the trial judge does grant remittitur, this court has held that the test on appeal is whether the trial judge abused his discretionary power. Harris v. Zee, 87 Nev. 309, 311, 486 P.2d 490, 491 (1971). The appeal is weighted in favor of the order given, and when there is a material conflict of evidence as to the extent of the damages, a challenge to the judge’s discretion is repelled.
 
 Id.
 
 However, if there is no conflict, the order to remit becomes suspect unless the amount awarded by the jury is so excessive as to suggest passion and prejudice.
 
 Id.
 
 at 312, 486 P.2d at 492.
 

 The district court found that although Hazelwood provided solid reasons to support a substantial verdict, the jury’s verdict was in part rendered under the influence of passion and prejudice. The court noted that Hazelwood provided no evidence of physical injury. It also noted that Hazelwood, a retired California Highway Patrol Officer, facing Harrah’s, a large corporation, must have incited feelings of passion and prejudice in the jury.
 

 Hazelwood argues that the fact that he did not suffer physical injury, loss of wages or diminished earning capacity does not establish excessiveness of the verdict. He contends that the humiliation, disgrace, emotional distress and worry caused by his periods of confinement and arrest were of such a magnitude that the jury’s verdict was proper. In addition, he maintains that there was no point in the trial during which the jury may have been incited by passion and prejudice due to the fact that Harrah’s is a large corporation.
 

 It is clear there was conflict as to just how much and what type of damages Hazelwood suffered. Therefore, in light of
 
 Harris,
 
 we defer to the district court’s findings. Although a judge may not invade the province of the jury, it is not an abuse of discretion for a judge to order a new trial on the issue of damages or, in the alternative, remittitur, when the jury verdict was the result of
 
 *1011
 
 passion and prejudice. Accordingly, we hold that the district court did not err in ordering a remittitur in this case.
 

 The district court erred in striking the award of prejudgment interest on the ground that the verdict failed to distinguish between past and future damages.
 

 NRS 17.130(2) disallows prejudgment interest for a judgment representing future damages. We have held that it is error for a trial court to award prejudgment interest for the entire amount of the verdict when it is impossible to determine what part of the verdict represented past damages. Stickler v. Quilici, 98 Nev. 595, 655 P.2d 527 (1982).
 

 In this case, jury instruction number 37 stated that the jury was to consider any damages Hazelwood might suffer in the future. The district court noted that the jury could have inferred from Hazelwood’s testimony regarding the ramifications of the criminal proceedings on his personal life that Hazelwood would suffer similar ramifications in the future. Therefore, citing the rule in
 
 Stickler,
 
 the court found that prejudgment interest was improper.
 

 However, we note an exception to this rule. In Farmers Home Mutual Ins. v. Fiscus, 102 Nev. 371, 725 P.2d 234 (1986), we held that when there is nothing in the record to suggest that future damages were included in the award, prejudgment interest is proper. In this case, the record does not indicate reference to future damages in evidence. The jury is presumed to have based its verdict solely on the evidence presented. Therefore, because there was no evidence presented representing Hazelwood’s future damages, it is logical to conclude that the jury did not base its verdict on future damages.
 

 Accordingly, we hold that the district court erred in striking prejudgment interest on the ground that the jury verdict did not differentiate between past and future damages.
 

 The district court did not err in refusing to grant a judgment notwithstanding the verdict on the claims of false imprisonment, negligence and negligent misrepresentation.
 

 We have stated that in passing on a motion for judgment notwithstanding the verdict, the district court must view the evidence in the light most favorable to the party against whom the motion is being made. Jeffers v. Kaufman Machinery, 101 Nev. 684, 707 P.2d 1153 (1985). The district court may grant the motion only if the evidence was such that a reasonable person
 
 *1012
 
 would have necessarily reached a different conclusion. Wilkes v. Anderson, 100 Nev. 433, 683 P.2d 35 (1984).
 

 The district court held that under the circumstances testified to in this case, it could not say that the evidence was such that a reasonable person would have necessarily reached a different verdict. We agree. The district court correctly held that substantial evidence supported the jury’s finding that a person of reasonable caution would not have believed that Hazelwood violated NRS 465.070(3). A reasonable person would have attempted to determine whether Hazelwood’s acts were done with an intent to defraud.
 

 Harrah’s argues that it is immune from civil liability for false imprisonment under NRS 465.101(1) which provides that any licensee or his officers may question any person in his establishment suspected of violating any of the gaming statutes without incurring civil liability. In addition, this statute also allows the licensee to detain the suspect provided the detention is for a reasonable time and the licensee has probable cause to believe a violation has occurred, again without incurring civil liability for false imprisonment.
 

 The district court correctly points out that the Harrah’s employees involved failed to obtain more information concerning Hazelwood’s possible violation of any statute. This failure to act caused the detention to be unreasonable and without probable cause. Therefore, we hold that the district court was correct in finding that Harrah’s was not immune from civil liability under NRS 465.101(1).
 

 As to negligence and negligent misrepresentation, we agree with the district court that the statements made by Eto created a false impression in the mind of Hazelwood; that is, that there was nothing improper about looking for the discarded ticket and that if he found it, he would be paid. Clearly, the jury could reasonably have believed that the misrepresentation proximately caused Hazelwood’s pecuniary losses.
 

 In conclusion, we hold that the district court was correct in ordering a new trial on the issue of damages or, in the alternative, a remittitur based upon a verdict the size of which reflected an element of passion and prejudice. We also hold that the district court correctly denied Harrah’s motion for judgment notwithstanding the verdict as to false imprisonment, negligence and negligent misrepresentation. However, we hold that the district court erred in striking prejudgment interest since there was no
 
 *1013
 
 evidence in the record to support a conclusion that the jury verdict addressed future damages.
 

 Therefore, we remand this matter to the district court with instructions to render judgment consistent with this opinion.
 
 [4]
 

 [1]
 

 A draw card is a computer generated listing of the winning numbers drawn in a particular game.
 

 [2]
 

 NRS 463.362 states in pertinent part:
 

 1. Whenever a licensee refuses payment of alleged winnings to a patron, the licensee and the patron are unable to resolve the dispute to the satisfaction of the patron and the dispute involves:
 

 (a) At least $500, the licensee shall immediately notify the board
 

 [3]
 

 NRS 465.070 states in pertinent part:
 

 It is unlawful for any person . . .
 

 3. To claim, collect or take, or attempt to claim, collect or take, money or anything of value in or from a gambling game, with intent to defraud, without having made a wager contingent thereon ....
 

 [4]
 

 The Honorable Robert E. Rose, Chief Justice, did not participate in the decision of this matter.