KRAUSE INC. AND HOME DEPOT U.S.A., INC.,
APPELLANTS, v. DON LITTLE, RESPONDENT.

No. 36406

November 21, 2001                                    34 P.3d 566

[Rehearing denied January 15, 2002]

*Osborne Law Office* and *Ann O. Hall,* Reno; *Law Offices of George H. Ellis,* Los Angeles, California, for Appellants.

*David L. Bolnick* and *William R. Kendall,* Reno, for Respondent.

*Bradley Drendel & Jeanney,* Reno, for Amicus Curiae Nevada Trial Lawyers Association.

Before Shearing, Rose and Becker, JJ.

## OPINION

By the Court, Rose, J.:

This appeal presents two novel legal questions: first, whether jurors may reconstruct an expert witness's experiment on an allegedly defective product; and second, whether a personal-injury plaintiff, must present expert testimony regarding future pain and suffering in order for the jury to award damages for the plaintiff's broken leg. We conclude that jurors may, using admitted evidence, reenact an experiment as performed by an expert. We further conclude that a broken bone is a sufficiently objective injury for a jury to award future pain and suffering damages without expert testimony.

### FACTS

Respondent, Don Little, a drywall contractor, purchased a Krause Multimatic ladder, manufactured by appellant Krause Inc., from appellant Home Depot U.S.A., Inc. The Multimatic is an articulated ladder that can be used in several ways, such as a stepladder, an extension ladder, or a scaffold.

Little was hired to repair some water damage in a garage. Little set up the Multimatic ladder, made sure that the hinges were locked, and began hanging drywall. While standing on the ladder's third step, Little inadvertently bumped the release lever. The ladder then collapsed and Little fell to the ground.

Little went directly to the emergency room. There, Dr. Mario Porras examined Little's ankle and concluded that it was broken in two places. Dr. Porras performed surgery, which entailed putting the bones back together using a plate and screws. Little stayed at the hospital overnight and left with a half-cast on his ankle.

Dr. Porras examined Little a week later, placed a full cast on his ankle, and recommended that he not apply any pressure on the ankle until the next visit. Two weeks later, Dr. Porras concluded that Little was progressing normally and placed the ankle in a "fracture boot," a type of cast that can be removed so that the ankle can be moved. Dr. Porras testified that five weeks after the injury, Little was progressing well, and he recommended that Little weight-bear as tolerated. Little's healing continued and after two and one-half months, Dr. Porras recommended that he resume full activity.

Five months after the accident, Little returned to Dr. Porras because he was experiencing limited range of motion in his ankle.

Dr. Porras determined that Little was experiencing pain from the implanted plate and screws. Dr. Porras removed the plate and screws in an outpatient surgery. Because Little was again progressing well, Dr. Porras released him to full activities. While Little claimed at trial that his ankle is still stiff and painful, Dr. Porras never testified regarding the likelihood of Little's future pain.

Little sued Krause and Home Depot, claiming strict product liability based upon a manufacturing and/or design defect. At trial, Little presented the expert testimony of Lindley Manning, a Nevada registered mechanical engineer. Manning performed tests upon the accident ladder to determine whether Little's version of the accident was accurate. He attempted to replicate the conditions by setting up the ladder on a concrete surface (similar to the floor of the garage in which Little was injured) and having a man of Little's approximate size move in the manner described by Little.

After several tests, Manning discovered that when touched in a certain way, the release lever would engage and cause the ladder to collapse. Because this touch is typical with normal use of the ladder, Manning concluded that the ladder was defectively designed. He opined that the ladder's dangerousness could be cured by placing a guard over the release lever or by warning the user that the ladder could collapse when touched in this way.

Krause and Home Depot presented the expert testimony of another mechanical engineer, Dr. Mack Quan. Dr. Quan did not perform any tests on the accident ladder. Instead, he performed various tests on other Krause ladders. Rather than using a stunt man to activate the release lever, Dr. Quan loaded the exemplar ladders with a static weight while pushing and pulling from various directions. After performing his tests, Dr. Quan concluded that the ladder was "adequate for its intended use," and that Little must have attempted to climb the ladder without locking the appropriate hinges. On cross-examination, however, Dr. Quan admitted that if the hinges were not locked, the ladder would collapse when a person attempted to climb it, not when the person was already standing on it. Dr. Quan also admitted that the Multimatic is the only articulated ladder that he is aware that collapses by disengaging one mechanism (the release lever that is located near the third rung). Other articulated ladders require a person to simultaneously disengage two mechanisms in order to cause collapse, making inadvertent collapses more difficult.

In a motion in limine, Little sought a ruling permitting him to present evidence of four other similar accidents to show that the Krause Multimatic ladder was defectively designed. The district court initially ruled that Little could present the deposition testimony of three other claimants, Theodore Klentzin, Charles

Eggers, and Gilbert Bloomquist, and accordingly, the depositions were read to the jury. After Little presented these depositions, the district court struck two of the depositions because they were not substantially similar to the circumstances of Little's accident. The district court then instructed the jury "to disregard all testimony concerning Charles Eggers and Gilbert Bloomquist." The jury was further instructed: "disregard anything you have heard as a result of that testimony in regards to either or both of these matters[,] and you shall treat those matters as if you had never heard of them."

Ultimately, the jury returned a verdict in favor of Little and awarded him $100,000 in damages ($80,000 in past damages and $20,000 for future pain and suffering). Krause and Home Depot moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The district court denied the motion, and this appeal followed.

## DISCUSSION

### Standard of review

This court reviews the district court's grant or denial of a motion for a new trial under an abuse of discretion standard.[1] The district court's decision will not be overturned absent a palpable abuse of discretion.[2] However, a district court's order denying judgment notwithstanding the verdict is not appealable.[3] We may construe, however, the appellant's notice of appeal from an order denying judgment notwithstanding the verdict as an intent to appeal from the underlying judgment.[4]

### Expert witness qualification

Appellants contend that the district court erred in allowing Manning to testify as an expert witness. This court has repeatedly stated that it will not weigh the credibility of witnesses because that duty rests with the trier of fact.[5] Instead, we review a district

---

[1]*Dow Chemical Co. v. Mahlum,* 114 Nev. 1468, 1505, 970 P.2d 98, 122 (1998) (citing *Hazelwood v. Harrah's,* 109 Nev. 1005, 1010, 862 P.2d 1189, 1192 (1993)).

[2]*Allum v. Valley Bank of Nevada,* 114 Nev. 1313, 1316, 970 P.2d 1062, 1064 (1998).

[3]*See Uniroyal Goodrich Tire v. Mercer,* 111 Nev. 318, 320 n.1, 890 P.2d 785, 790 n.1 (1995) (citing *Ross v. Giacomo,* 97 Nev. 550, 635 P.2d 298 (1981)).

[4]*See Uniroyal,* 111 Nev. at 320 n.1, 890 P.2d at 790 n.1.

[5]*See, e.g., Thomas v. State,* 114 Nev. 1127, 1142, 967 P.2d 1111, 1121

court's decision to admit expert testimony for an abuse of discretion. We will only reverse a district court's decision to admit expert testimony on a showing of a clear abuse of discretion.[6]

Appellants argue that this court should adopt a new standard for the admissibility of expert testimony, akin to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[7] We have previously declined to adopt the *Daubert* standard.[8] We now take this opportunity to reaffirm our existing legal standard concerning the admissibility of expert testimony. The district court is in a better position than this court to determine the helpfulness of proposed testimony in light of the material facts in issue. When the district court's exercise of discretion is not manifestly wrong under NRS 50.275, we will not reverse.[9]

NRS 50.275 provides that "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by special knowledge, skill, experience, training or education may testify to matters within the scope of such knowledge." Here, the ladder's alleged defectiveness was a fact in issue. Here, scientific knowledge regarding the ladder's potential to collapse had the potential to assist the jury in determining whether the Krause ladder was defective.

Manning is a registered mechanical engineer with two degrees and multiple certifications in the field. Manning has been a professor in the engineering department of the University of Nevada, Reno, for twenty-five years. Further, Manning belongs to numerous organizations of professional engineers. Under such circumstances, we find no abuse of discretion in the district court's decision to characterize Manning as a qualified expert with special knowledge that could assist the jury.

*Spoliation of evidence*

Krause and Home Depot also argue that the district court erred in admitting the accident ladder into evidence. Appellants contend that Manning's experiments damaged the ladder, making its

---

(1998) (citing *Bolden v. State,* 97 Nev. 71, 624 P.2d 20 (1981)); *Hutchins v. State,* 110 Nev. 103, 107, 867 P.2d 1136, 1139 (1994) (citing *Bolden,* 97 Nev. at 73, 624 P.2d at 20).

[6]*Mulder v. State,* 116 Nev. 1, 12-13, 992 P.2d 845, 852 (2000) (citing *Smith v. State,* 100 Nev. 570, 572, 688 P.2d 326, 327 (1984)).

[7]509 U.S. 579 (1993).

[8]*See Mahlum,* 114 Nev. at 1482 n.3, 970 P.2d at 108 n.3.

[9]*See Bolin v. State,* 114 Nev. 503, 525, 960 P.2d 784, 798-99 (1998).

admission highly prejudicial. "NRS 48.035 allows the district court to exclude evidence if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or undue delay."[10] "By requiring the prejudicial effect of evidence to 'substantially outweigh' its probative value, NRS 48.035 [strongly favors] admissibility."[11] To merit exclusion, the evidence must unfairly prejudice an opponent, typically by appealing to the emotional and sympathetic tendencies of a jury, rather than the jury's intellectual ability to evaluate evidence.[12] A district court's decision on this issue will not be disturbed unless "it is 'manifestly wrong.' "[13]

Here, Little claimed that the ladder suffered a design or manufacturing defect which made it unreasonably dangerous. The accident ladder was highly probative of the existence of a manufacturing defect. Krause and Home Depot allege that Little's experts damaged the ladder by kicking it repeatedly during tests. True, such damage may have decreased the ladder's reliability as evidence. However, appellants did not show that the ladder was so fundamentally altered that it ceased to be probative of the existence of a defect.

Further, Krause and Home Depot do not argue that the ladder appealed to the jury's emotional and sympathetic tendencies. Rather, Krause and Home Depot argue that the jury lacked the intellectual ability to evaluate the extent to which Manning damaged the ladder. Such an argument does not establish a high degree of unfair prejudice. The accident ladder possessed at least some probative value, and its admission was not excessively prejudicial. We cannot say that the district court's decision to admit the ladder into evidence was manifestly wrong.

*Jury experiment*

It is well established that "jurors may not receive evidence out of court."[14] This court has recognized the rationale for the rule: " 'For a jury to consider independent facts, unsifted as to their accuracy by cross-examination, and unsupported by the solemnity

---

[10]*Schlotfeldt v. Charter Hosp. of Las Vegas,* 112 Nev. 42, 45, 910 P.2d 271, 273 (1996).

[11]*Id.* at 46, 910 P.2d at 273.

[12]*Id.* (citing Fed. R. Evid. 403 advisory committee's note).

[13]*Id.* (quoting *Daly v. State,* 99 Nev. 564, 567, 665 P.2d 798, 801 (1983)).

[14]Caroll J. Miller, Annotation, *Propriety of Juror's Tests or Experiments in Jury Room,* 31 A.L.R.4th 566, 571 (1984) (citing 75 Am. Jur. 2d, Trial § 979).

attending their presentation on oath, before a judge, jury, parties and bystanders, and without an opportunity to contradict or explain them can never be countenanced.' "[15] "[T]herefore, insofar as tests or experiments carried out by the jury during deliberations have the effect of introducing new evidence out of the presence of the court and parties, such tests and experiments are improper and, if the new evidence . . . has a substantial effect on the verdict, prejudicial."[16] Here, we must decide whether a jury's use of admitted evidence to reenact an expert witness's experiment that was performed at trial has the effect of introducing new evidence. We conclude that it does not.

The jury's function is to be the final arbiter of truth based upon the evidence submitted.[17] Other courts have held that when the jury reconstructs an expert's experiment, the jury is merely testing the veracity of the expert's testimony.[18] The jury here heard extensive expert testimony from Manning regarding experiments that indicated when the ladder could collapse. The jury then took the accident ladder, which was admitted into evidence, and reenacted those experiments consistent with Manning's testimony. In doing so, the jury did not produce extrinsic evidence, but rather examined the accuracy of Manning's expert testimony. This was a proper exercise of the jury's truth-seeking function.

This is not a situation in which the jury took it upon itself to devise its own experiment on the admitted evidence, or considered objects or expert opinions not admitted into evidence. Such activities would constitute misconduct.[19] Here, rather, the jury took admitted real evidence and examined it in light of admitted expert testimony. In so doing, the jury performed its task in a legitimate

---

[15]*Barker v. State,* 95 Nev. 309, 313, 594 P.2d 719, 721 (1979) (quoting *Thomas v. Kansas Power and Light Company,* 340 P.2d 379, 385 (Kan. 1959)).

[16]Miller, *supra* note 14, at 571.

[17]*See Mortensen v. State,* 115 Nev. 273, 289, 986 P.2d 1105, 1116 (1999).

[18]*See, e.g., Banghart v. Origoverken,* 49 F.3d 1302, 1307 (8th Cir. 1995) (holding that jurors' reenactment of expert's experiment did not introduce extrinsic evidence, but merely tested the truth of the expert's statements); *Muchell v. V & V, Inc.,* 622 A.2d 1365, 1367 (N.J. Super. Ct. Law Div. 1992) (holding that jurors' experiment that was "consistent with the legal proofs . . . at trial" was proper); *People v. Engler,* 540 N.Y.S.2d 591, 594 (N.Y. App. Div. 1989) (holding that jurors' reenactment of trial testimony on admitted evidence did not constitute misconduct).

[19]*See Barker,* 95 Nev. at 312, 594 P.2d at 721 (finding misconduct where juror introduced outside research on the effects of heroin); *State v. Thacker,* 95 Nev. 500, 502, 596 P.2d 508, 509 (1979) (finding misconduct where juror offered expert opinion on cattle weight); *People v. Castro,* 229 Cal. Rptr. 280, 281-82 (Ct. App. 1986) (finding misconduct where juror conducted visibility experiment at crime scene).

and befitting manner. We accordingly find no abuse of discretion in the district court's denial of a new trial on this ground.

## Similar accidents

Krause and Home Depot assert that the district court erred in denying a new trial after the depositions of Eggers and Bloomquist were erroneously presented to the jury. Appellants contend that the reading of the Eggers and Bloomquist depositions "truly damaged" their case. The district court, however, instructed the jury to disregard the Eggers and Bloomquist depositions. Further, we are of the opinion that the Bloomquist deposition probably should have been admitted as evidence of a substantially· similar accident.[20] Bloomquist was injured as he descended his ladder, and although he did not state that he actually touched the release lever, the jury could reasonably draw this inference.

This court presumes that a jury follows the district court's instructions.[21] Krause and Home Depot present no evidence to rebut this presumption, even though they interviewed several jurors after trial. The district court's instructions cured any error or prejudice that resulted from reading the depositions. Accordingly, we find no abuse of discretion in the denial of a new trial on this ground.[22]

## Manufacturing defect instruction

Krause and Home Depot further argue that the district court erred in instructing the jury on a manufacturing defect, as Little presented no expert testimony regarding the existence of a manufacturing defect. We have previously held, however, that expert testimony is not always necessary to establish the existence of a manufacturing defect.[23] Rather, evidence of an unexpected, dangerous malfunction gives rise to an inference of a manufacturing

[20]*See Andrews v. Harley Davidson,* 106 Nev. 533, 538-39, 796 P.2d 1092, 1096 (1990) (noting that minor differences in accidents do not warrant exclusion).

[21]*Lisle v. State,* 113 Nev. 540, 558, 937 P.2d 437, 484 (1997) (citing *Tennessee v. Street,* 471 U.S. 409, 415 (1985)).

[22]Appellants also argue that under *Galloway v. McDonalds Restaurants,* 102 Nev. 534, 728 P.2d 826 (1986), they were entitled to an instruction on the absence of prior accidents to show that the ladder was not defective. This argument is without merit; Klentzin's deposition was evidence of another prior accident and appellants do not challenge the admission of this deposition.

[23]*See Stackiewicz v. Nissan Motor Corp.,* 100 Nev. 443, 448, 686 P.2d 925, 928 (1984).

defect.[24] In such a situation, direct proof of the malfunction's cause is unnecessary; the circumstantial evidence of the malfunction can prove a manufacturing defect.[25]

Here, Little testified that the ladder collapsed as he stood on it. Assuming the truth of this testimony, the ladder clearly did not perform in a reasonable manner in light of its nature and intended function; *i.e.,* the ladder was defective. The average juror is quite familiar with a ladder's functions, and does not require expert testimony to know that a ladder should not collapse while a person stands on it. The jury could properly infer from Little's testimony that this unexpected and dangerous malfunction derived from a manufacturing defect. This instruction was proper and the district court did not abuse its discretion in this regard.

### Future damages instruction

The district court instructed that the jury could award reasonable compensation for "physical and mental pain, suffering, anguish and disability" that Little was "reasonably certain to experience in the future as a result of the accident." Krause and Home Depot assert that this instruction was improper because Little presented no expert testimony regarding future damages.

This court has held that when an injury or disability is subjective and not demonstrable to others (such as headaches), expert medical testimony is necessary before a jury may award future damages.[26] We have also held that a shoulder injury causing a demonstrably limited range of arm motion is an objective injury which does not require expert testimony before a jury awards damages for future pain and suffering.[27] We now hold that a broken bone is closer to the latter situation than the former, and accordingly a plaintiff need not present expert testimony before the district court instructs on future damages.

First, the nature of Little's injury is clear and readily observable. The jury did not require an expert's testimony to understand the magnitude of the injury. Further, the extent to which a broken bone causes pain and suffering is common knowledge. The jury could estimate the degree of future discomfort which Little would

[24]*Id.*

[25]*Id.* at 450-51, 686 P.2d at 929.

[26]*See Gutierrez v. Sutton Vending Serv.,* 80 Nev. 562, 565-66, 397 P.2d 3, 4-5 (1964).

[27]*See Paul v. Imperial Palace, Inc.,* 111 Nev. 1544, 1548, 908 P.2d 226, 229 (1995).

experience without necessarily receiving an expert's assistance. Accordingly, we hold that the district court did not err in instructing the jury on future damages.

## CONCLUSION

We hold that a jury may reconstruct an expert's experiment performed or described at trial using admitted evidence, provided the reconstruction is consistent with the experiment. Under such circumstances, the jury is not introducing new evidence, but rather testing the veracity of the expert's testimony.

Additionally, we also hold that a broken bone is an objective injury that does not call for expert testimony regarding the plaintiff's future pain and suffering before the district court instructs on future damages. Such an injury is readily observable and understandable by the jury without an expert's assistance.

Having considered these and all of appellants' other arguments, we find no abuse of discretion in the district court's denial of a new trial. Accordingly, we affirm the district court's order.

SHEARING, J., concurs.

BECKER, J., concurring in part and dissenting in part:

I concur with the majority opinion on all issues except the future damages instruction. Neither *Gutierrez v. Sutton Vending Service, Inc.*[1] nor *Paul v. Imperial Palace, Inc.*[2] stand for the proposition that a plaintiff need not present expert testimony to prove future pain, suffering or disability damages when the underlying injury is objective in nature. Rather these cases hold that expert testimony is unnecessary where the cause of the future pain, suffering or disability is objectively demonstrable to the trier of fact.

*Gutierrez* involved a blow to a young man's head. The young man claimed he could not longer play the trumpet because of headaches related to the initial injury. However, medical testimony indicated he had fully recovered from the injury more than a year before the trial. We noted that no objective or clinical signs supported the claim for a continuing injury and that the claimed disability or continuing problem, a headache, is subjective in nature. Because the future damage was not "readily observable by the jurors," we concluded he was not entitled to present a case of future damages to the jury.[3]

Subsequent to *Gutierrez*, we decided *Lerner Shops of Nevada,*

---

[1] 80 Nev. 562, 397 P.2d 3 (1964).

[2] 111 Nev. 1544, 908 P.2d 226 (1995).

[3] *Gutierrez,* 80 Nev. at 565-66, 397 P.2d at 5.

*Inc. v. Marin,* where we stated that, in cases involving subjective physical injury, "the claim must be substantially supported by expert testimony to the effect that future pain and suffering is a probable consequence rather than a mere possibility."[4]

*Lerner* was cited with approval in *Paul. Paul* involved a plaintiff who had a torn rotator cuff. Her surgeon testified that she had a thirty percent disability in her shoulder and she demonstrated her loss of arm motion to the jury. We stated that:

> Because of this supporting evidence and because Paul's disability was not "subjective," . . . Paul provided sufficient evidence of future pain, suffering, and disability to allow the jury to award such damages.[5]

Here, Little suffered a broken ankle. He was released to full activity by his doctor. The doctor did not testify that Little suffered from a permanent disability or that it was probable he would experience future pain or suffering. Little testified that his ankle was still stiff and painful, but pain and stiffness are not readily observable to a jury. It is certainly possible that a broken ankle will cause occasional pain and stiffness, but the probability of such symptoms can only be established through expert testimony.

Because Little presented insufficient evidence of future damages, the district court abused its discretion in denying the motion for a new trial. I would remand the case to the district court with instructions to issue a remittitur reducing the verdict by the amount of the future damages or grant a new trial.

---

[4]83 Nev. 75, 79-80, 423 P.2d 398, 401 (1967).

[5]*Paul,* 111 Nev. at 1548, 908 P.2d at 229.