OPINION
 

 Per Curiam:
 

 This is a case about tenure. Peter Stacey, a University of Nevada, Reno (“UNR”) professor, was denied tenure numerous times. Consequently, Stacey sued UNR for breach of contract, alleging that UNR was contractually obligated to grant him tenure because he had received excellent evaluations over the years.
 

 In response to Stacey’s claims, UNR filed several motions seeking dismissal, alleging among other things that tenure was discretionary under Stacey’s contract and that UNR was statutorily immune from suit pursuant to NRS 41.032(2). The district court denied UNR’s motions, ruling that the jury should determine if UNR had breached its employment contract.
 

 After a three-day trial, the jury found that UNR had breached its contract with Stacey and awarded him $400,000.00 in damages. Thereafter, UNR filed this timely appeal contending, in relevant part, that Stacey had no contractual right to tenure. In reviewing the plain language of Stacey’s contract, we agree with UNR that Stacey had no contractual right to tenure as a matter of law. Accordingly, we reverse the judgment below.
 

 
 *430
 

 STATEMENT OF THE FACTS
 

 In March 1990, UNR hired Stacey for the position of Full Professor of Conservation Biology in its Environmental and Resource Sciences Department of the College of Agriculture. UNR gave Stacey a twelve-month contract with three years credit toward tenure track.
 
 [1]
 
 With respect to attaining tenure, Stacey testified that when he accepted the job at UNR he believed that he was contractually entitled to tenure provided that he earned an “excellent” rating in teaching and a “satisfactory” rating in service. These ratings are the threshold criteria for tenure consideration set forth in the bylaws of the University and Community College System of Nevada (the “code”).
 

 The record reveals that Stacey received adequate performance evaluation ratings to qualify for tenure consideration. Consequently, Stacey applied for tenure every year from 1993-95, but was rejected each time despite receiving excellent ratings. Because Stacey failed to make tenure by his “up and out year,” UNR issued Stacey a terminable contract, which provided that UNR would employ Stacey through June 30, -1995, but was otherwise not renewable. Stacey signed the terminable contract “under protest,” because his 1994 tenure application was being reconsidered.
 

 Eventually, however, in an attempt to settle numerous grievances that Stacey had filed, UNR withdrew Stacey’s terminable contract in a written agreement signed by the parties on February 28, 1995 (the “1995 agreement”). The 1995 agreement provided that UNR would withdraw Stacey’s terminable contract and extend Stacey’s employment until June 30, 1997, in exchange for Stacey’s release of all claims against UNR. The 1995 agreement expressly stated that Stacey would not be “tenured by default,” but rather could apply for tenure under UNR’s normal procedures during his new probationary period.
 

 These ‘ ‘normal procedures’ ’ for applying for tenure were contained in four written administrative documents that were incorporated by reference into Stacey’s 1995 agreement and included the code, UNR’s bylaws, UNR’s administrative manual, and UNR’s College of Agriculture bylaws.
 

 Based on the 1995 agreement, Stacey again applied for tenure in 1996. Despite the fact that Stacey had received an excellent
 
 *431
 
 performance rating, Stacey’s 1996 application for tenure was denied. Stacey filed for reconsideration of his 1996 application, but it also was denied.
 
 [2]
 

 Consequently, on July 19, 1996, Stacey filed a breach of contract action, alleging in relevant part that UNR had breached the 1995 agreement by denying Stacey’s 1996 application for tenure. In response to Stacey’s claims, UNR filed a motion for summary judgment, alleging among other things.that under the 1995 agreement the grant of tenure was a subjective professional judgment, and thus its denial of Stacey’s tenure application was not a breach of contract. The district court, however, denied UNR’s motion for summary judgment on Stacey’s 1996 breach of contract claim, finding that Stacey had raised triable issues of material fact as to whether UNR breached its contract with him.
 

 After a three-day trial on Stacey’s claim, the jury found that UNR had breached its contract with Stacey, awarded him $400,000.00 in damages, and the district court entered the judgment in accordance with the jury’s verdict. Thereafter, UNR filed this timely appeal alleging, in relevant part, that the district court erred in denying its motion for summary judgment.
 

 DISCUSSION
 

 Summary judgment orders are reviewed de novo.
 
 See
 
 Day v. Zubel, 112 Nev. 972, 977, 922 P.2d 536, 539 (1996). Summary judgment is appropriate when a contract is clear and unambiguous, meaning that the contract is not reasonably susceptible to more than one interpretation.
 
 See
 
 Margrave v. Dermody Properties, 110 Nev. 824, 827, 878 P.2d 291, 293 (1994); Chwialkowski v. Sachs, 108 Nev. 404, 406, 834 P.2d 405, 406 (1992) (holding that summary judgment was proper because an unambiguous contract can be construed as a matter of law from the language of the document).
 

 In the instant matter, UNR contends that the district court erred in denying its motion for summary judgment of Stacey’s breach of contract action because UNR’s decision to grant Stacey tenure was discretionary under the 1995 agreement as a matter of law.
 
 [3]
 
 
 *432
 
 We agree with UNR’s contention that summary judgment was mandated in this instance. The contract before us is unambiguous and susceptible to only one interpretation—UNR’s decision to grant Stacey tenure was completely discretionary.
 

 The plain language of Stacey’s contract is replete with written provisions concerning the discretionary nature of UNR’s decision to grant tenure. These provisions are set forth in four separate written documents: (1) the code, (2) the UNR bylaws, (3) the UNR administrative manual, and (4) the UNR College of Agriculture bylaws.
 
 [4]
 

 First, the code, particularly chapter three, sets forth the procedures involved in the tenure application process. For example, section 3.4.2(a) sets forth the minimum standards for eligibility for tenure consideration, specifically an “excellent” rating in teaching and a “satisfactory rating” in service. Section three also describes tenure as a privilege:
 

 3.1.2
 
 Conditions on Tenure.
 
 The major objectives of tenure are to provide a faculty committed to excellence and to provide a substantial degree of security to those
 
 persons who have exhibited excellent abilities, sufficient to convince the University of Nevada community that their expected services and performances in the future justify the privileges afforded by tenure.
 

 (Emphasis added.) More importantly, section 3.4.1 of the code provides that the Board of Regents has final authority in granting tenure and requires a majority vote from a quorum of the Board of Regents.
 

 Second, the UNR bylaws augment the criteria for tenure.' Specifically, sections 40, 41, 42, and 45 prescribe that tenure evaluations are made on the basis of professional responsibilities according to the missions and priorities of the applicant’s department. Further, such decisions require peer review, including a recommendation from the Academic Faculty Promotion and Tenure Committee.
 

 Third, UNR’s administrative manual augments the code with respect to tenure. Section 2,723 states explicitly that tenure is not automatic:
 

 It should be remembered that granting of tenure and of promotion to a higher rank is not to be expected or made auto
 
 *433
 
 matically. Mediocrity and substandard performance must not be regarded in such a way as to permanently perpetuate a faculty member of less than superior caliber.
 
 Tenure is granted only in cases of definite merit and absence of any doubt that the individual be appointed for life. . . .
 

 (Emphasis added.) Moreover, the manual, section 2,721, sets forth numerous criteria in recommending tenure, including effective teaching skills, ability to communicate with students, evidence of continued professional growth, a record of creative research, indication of respect and esteem of colleagues, and respect for participation in community service.
 

 Fourth, the College of Agriculture augments the code in its bylaws. Part IV of the bylaws provides for the establishment of a peer review committee that is required to review all tenure applications and make an independent recommendation.
 

 We cannot reconcile the aforementioned discretionary provisions of Stacey’s contract with his theory that he was contractually entitled to tenure, because so doing would render numerous contractual provisions meaningless.
 
 See
 
 Musser v. Bank of America, 114 Nev. 945, 950, 964 P.2d 51, 54 (1998) (“[Cjontracts should be construed so as to avoid rendering portions of them superfluous.”); Coblentz v. Union Welfare Fund, 112 Nev. 1161, 1169, 925 P.2d 496, 501 (1996). Indeed, the provisions of Stacey’s contract negate any theory that tenure was automatic, and instead, provide that the grant of tenure is a privilege and a decision of such import that numerous criteria are set forth, committees are formed, and votes are taken. Because the contractual provisions concerning tenure clearly require the exercise of discretion and subjective decision making, we agree with UNR that it was entitled to summary judgment because its denial of Stacey’s tenure application was not, as a matter of law, a breach of contract.
 

 We therefore conclude, based on the aforementioned contractual provisions, that tenure is a multidimensional, subjective, decision-making process where numerous traits and work habits of a professor are considered. Accordingly, the district court erred in denying summary judgment, as there was no triable issue of material fact because UNR’s denial of tenure was discretionary under the contract—not a breach of contract.
 

 Although the plain meaning of the language of Stacey’s contract controls our analysis, we are not unaware of the long-standing precedent recognizing that faculty appointment at the university level is an area poorly suited for judicial supervision, and thus one where judicial restraint must be exercised.
 
 See
 
 Kunda v. Muhlenberg College, 621 F.2d 532 (3d Cir. 1980); Faro v. New York Univ., 502 F.2d 1229 (2d Cir. 1974). Indeed, other juris
 
 *434
 
 dictions have held that a university’s decision to grant tenure is a discretionary exercise of judgment that should not be actionable unless arbitrary or unconstitutional.
 
 See
 
 Harrison v. Goldstein, 611 N.Y.S.2d 623 (N.Y. App. Div. 1994); Coe v. Board of Regents, 409 N.W.2d 166 (Wis. Ct. App. 1987); Goodisman v. Lytle, 724 F.2d 818 (9th Cir. 1984).
 

 This judicial reluctance to intrude upon university decisions is imbedded in the deeply rooted principles of academic freedom.
 
 See Kunda,
 
 621 F.2d at 547. “Academic freedom, though not a specifically enumerated constitutional right, long has been viewed as a special concern of the First Amendment.” EEOC v. University of Notre Dame Du Lac, 715 F.2d 331, 335 (7th Cir. 1983). This special concern arises from academic freedom’s tremendous value to all of society, as it fosters an environment of experimentation, invention, creation, and the robust exchange of ideas.
 
 See
 
 Sweezey v. New Hampshire, 354 U.S. 234, 263 (1956) (Frankfurter, J., concurring);
 
 University of Notre Dame,
 
 715 F.2d at 335;
 
 Kunda,
 
 621 F.2d at 547. Because of the importance of academic freedom to our society, we hereby reaffirm our commitment to protect a university’s inherent right to govern itself within constitutional limitations.
 

 As an aside, we note that we also agree with UNR’s contention that it was immune from suit because its actions were discretionary. NRS 41.032(2) provides that state agencies performing discretionary acts are immune from suit. We have previously defined a “discretionary act” as an act that requires a decision requiring personal deliberation and judgment.
 
 See
 
 Parker v. Mineral County, 102 Nev. 593, 595, 729 P.2d 491, 493 (1986). For example, this court has held that discretionary acts for which a government entity was immune from suit included a decision not to respond to a citizen’s report of a person in distress and a decision to construct a parking lot, freeway, or crosswalk.
 
 See id.; see also
 
 Foley v. City of Reno, 100 Nev. 307, 309, 680 P.2d 975, 976 (1984); Harrigan v. City of Reno, 86 Nev. 678, 475 P.2d 94 (1970); State v. Webster, 88 Nev. 690, 504 P.2d 1316 (1972).
 

 In contrast, where an act is operational or ministerial rather than discretionary, this court has held that NRS 41.032(2) provides no statutory immunity, and thus an entity has a duty to use due care. For example, once the discretionary decision to build a freeway is made, the state must use due care in the ministerial act of the freeway’s construction.
 
 See Foley,
 
 100 Nev. at 309, 680 P.2d at 976. We see nothing ministerial, however, in a university’s subjective decision to grant one of its professors lifetime employ
 
 *435
 
 ment. Therefore, in light of this court’s holding in
 
 Foley,
 
 we conclude that UNR is statutorily immune from suit because its decision to grant tenure was a discretionary act, rather than an operational or ministerial function.
 

 CONCLUSION
 

 We hold that the district court erred in denying UNR’s motion for summary judgment because tenure was discretionary under Stacey’s contract. Accordingly, we reverse the judgment in favor of Stacey.
 

 [1]
 

 Generally speaking, tenure track at UNR is six years. If the professor is not tenured by the sixth year (the “up and out year”), then UNR ordinarily issues that professor a terminable contract for the seventh year, giving that professor twelve-months’ notice that his contract will not be renewed. Stacey testified that he knew that his “up and out year” was 1994-95 and that if he failed to attain tenure before 1995, UNR would provide him with a terminable contract notifying him that he would be terminated in twelve months.
 

 [2]
 

 Eventually, because Stacey had not attained tenure within the time allotted under the 1995 agreement, Stacey lost his job on June 30, 1997.
 

 [3]
 

 UNR asserts numerous other contentions on appeal, including that the district court committed reversible error in instructing the jury, in admitting inadmissible evidence, and in making improper comments. Because we conclude that summary judgment was proper in this matter, we need not and do not reach these other issues.
 

 [4]
 

 These administrative bylaws and rules were incorporated by reference into Stacey’s 1995 agreement that explicitly stated that Stacey would not be “tenured by default,” but could apply for tenure under UNR’s “normal procedures.” The “normal procedures” for eligibility for tenure are set forth in section 3.4.2 of the code, which authorizes each university, its administrative units, and its departments to provide additional written criteria for attaining tenure.