*976
 
 OPINION
 

 By the Court, Leavitt, D. L:
 

 The University of Nevada, Las Vegas (UNLV) terminated the employment of Richard L. Sutton, a tenured professor. Sutton sued UNLV, asserting claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of substantive and procedural due process. In the alternative, Sutton sought judicial review of UNLV’s administrative decision to terminate his employment. UNLV moved for summary judgment, claiming statutory immunity from civil liability under its discretionary employment power. Alternatively, UNLV moved to limit the district court to judicial review. The district court denied summary judgment and rejected the claim that this case should be treated as a judicial review of an administrative decision.
 

 Following a jury trial, the district court, based upon the jury verdict, entered judgment for Sutton on the claims of breach of contract and breach of the implied covenant of good faith and fair dealing. UNLV now appeals the final judgment, contending that the district court erred in denying its motion for summary judgment and made multiple errors at trial.
 

 FACTUAL AND PROCEDURAL HISTORY
 

 In 1974, UNLV hired Sutton as an associate professor. Sutton became a tenured professor in 1978.
 

 Under the University and Community College System of Nevada (UCCSN) Code, all professors are required to undergo an annual evaluation based on their research, teaching and service. The code provides that a tenured professor may be terminated if he or she receives overall unsatisfactory ratings for two consecutive years. If a university seeks to terminate a professor, the code requires, as part of its administrative procedure, a complaint and a hearing. The process includes a university-appointed administrative code officer and a university-appointed faculty hearing committee. The committee takes evidence and thereafter makes a recommendation to the university president. The code requires that the hearing be held and a recommendation made to the university president no later than six months after the complaint was filed with the administrative code officer.
 

 
 *977
 
 In both 1990 and 1991, Sutton received consecutive unsatisfactory annual evaluations, which is cause for termination under the previously described terms of the UCCSN code. On December 18, 1992, UNLV filed a complaint against Sutton with its administrative code officer. UNLV scheduled a hearing for May 7, 1993, within the required six-month time period. The hearing did not take place, however, because the parties believed they had reached a settlement. The settlement required that Sutton immediately tender a resignation letter effective at the end of the following academic year. In exchange, UNLV agreed to cancel the hearing and offer Sutton a nontenured teaching contract. The administrative code officer sent an unsigned, university-prepared draft settlement agreement to Sutton. Prior to signing it, Sutton penned interlineations to the agreement, which he believed reflected the actual terms the parties had agreed to. Of significance were Sutton’s interlineated terms indicating his employment was guaranteed through the 1993/94 academic year and that he would be eligible for cost-of-living increases. Sutton signed and delivered the interlineated agreement to UNLV, along with his resignation letter. Subsequently, UNLV unilaterally altered the document by removing all but the page containing Sutton’s signature and replaced Sutton’s interlineated document with their first non-interlineated draft and appending the page with Sutton’s signature to the original draft. UNLV then signed the settlement agreement. Later, UNLV offered Sutton a 1993/94 employment contract that did not contain the guarantee language that Sutton had written into the agreement. After Sutton refused to sign the 1993/94 employment contract without the guarantee language, UNLV terminated his employment.
 

 Sutton, in February 1995, filed a complaint in district court alleging breach of contract (Sutton I). The case proceeded to trial in April 1999, but prior to the jury verdict, Sutton and UNLV stipulated to a form of judgment. The stipulation indicated that if the jury believed Sutton’s interlineated settlement document represented the true settlement between the parties, then UNLV would concede that it had breached the contract and Sutton would be entitled to six years of back pay and reinstatement as a tenured professor. The jury returned a verdict in favor of Sutton. The stipulation was incorporated into the judgment and required UNLV “to continue [Sutton] in his employment unless and until such time as his tenure is revoked by hearing held pursuant to the university code.’ ’
 

 In June 1999, UNLV tendered the court-ordered 1999/2000 employment contract to Sutton. The contract contained an integration clause but made no reference to the parties’ stipulation for a hearing as referenced in the judgment. Prior to tendering the court-
 
 *978
 
 ordered employment contract to Sutton, UNLV Provost Douglas Ferraro and university counsel recommended to UNLV President Carol Harter that Sutton’s 1990 and 1991 unsatisfactory evaluations proceed anew to a code hearing. President Harter testified regarding the need for the hearing and said, “We [Provost Douglas Ferraro and President Harter] did not believe in the justice of the judgment and believed that it needed to go forward as it would have in 1991, in that area, exactly the way it would have gone forward had we been back at that point.” Thereafter, in June 1999, UNLV filed another complaint pursuant to its administrative process against Sutton for the 1990 and 1991 unsatisfactory evaluations. UNLV determined the administratively mandated six-month deadline within which to hold a hearing did not apply to the time that had passed between the parties’ 1993 settlement and UNLV’s 1999 administrative complaint against Sutton because, as Harter testified:
 

 What happened when — when professor Sutton agreed to sign a letter of resignation back in 1992 or -3, we accepted that in lieu of having this hearing. We believed the letter of resignation effectively vacated the need to have the hearing. When the Court then decided, in 1999, that the entire activity was essentially vacated, it put us back in time to the period in 1992 where we were required, within six months, to have the hearing. In other words, the intervening years had effectively suspended the six month period, in our judgment and in the judgment of the counsel of the university system.
 

 The faculty hearing committee conducted a hearing within six months of UNLV’S June 1999 complaint and recommended termination of Sutton’s employment. The president adopted the recommendation, and Sutton’s employment was terminated effective December 21, 1999. Sutton timely appealed to the Board of Regents. Following a hearing, the Board of Regents upheld the president’s decision.
 

 Sutton then filed a second lawsuit in district court, which is the subject of this appeal (Sutton II). Sutton claimed breach of contract and breach of the implied covenant of good faith and fair dealing and sought declaratory relief for violations of his substantive and procedural due process rights. Sutton sought relief based on the 1999 court-ordered contract referenced in the judgment. According to Sutton, the contract as well as the Sutton I judgment prohibited UNLV from using the 1990 or 1991 evaluations as a basis for terminating his employment. Alternatively, Sutton’s complaint petitioned for judicial review and/or a writ of certiorari in the event the district court determined the case was entitled only to judicial review of an administrative decision.
 

 
 *979
 
 Eight months after filing its answer, UNLV filed a motion for summary judgment on all claims. UNLV argued that the decision to terminate a tenured faculty member’s employment is within its discretionary power, and therefore, UNLV is statutorily immune from civil liability. Alternatively, UNLV sought to dismiss the contract claims, vacate the trial, and proceed as a judicial review. The district court denied UNLV’s motion, concluding as a matter of law that termination of a tenured professor is not a discretionary act and that tenure would be illusory if UNLV could terminate a tenured professor at its discretion. Consequently, the district court held that the decision to terminate Sutton was not a discretionary act, but rather it was a ministerial act which requires due process and for which immunity is not available. The district court further found judicial review unwarranted and determined that Sutton was entitled to proceed with a civil action for breach of contract.
 

 The case proceeded to trial with the jury returning a verdict in Sutton’s favor on his claims of breach of contract and breach of the implied covenant of good faith and fair dealing. Pursuant to a pre-verdict stipulation between the parties, the district court reinstated Sutton as a tenured professor at UNLV. Thereafter, UNLV filed this timely appeal.
 

 DISCUSSION
 

 UNLV asserts first that the district court erred when it denied UNLV’s motion for summary judgment because: (1) university employment decisions are discretionary and therefore UNLV is entitled to statutory immunity from civil liability, and (2) the judgment in the previous lawsuit required Sutton to undergo a code hearing and Sutton’s sole remedy is therefore judicial review. Second, UNLV claims that the district court made multiple errors at trial.
 

 I. District court denial of summary judgment
 

 UNLV contends the district court erred by denying its motion for summary judgment to dismiss the entire action. This court reviews summary judgment orders de novo.
 
 [2]
 
 Summary judgment is only appropriate when, after a review of the record in a light most favorable to the nonmoving party, there remain no issues of material fact and the moving party is entitled to judgment as a matter of law.
 
 [3]
 
 “In determining whether summary judgment is proper, the
 
 *980
 
 nonmoving party is entitled to have the evidence and all reasonable inferences accepted as true.”
 
 [4]
 

 In this appeal, we must determine whether the trial court erred when it denied UNLV’s motion for summary judgment, holding that revocation of tenure is a ministerial act and that judicial review was not warranted.
 

 A. UNLV breached the 1999/2000 court-ordered contract, and therefore, the court is not required to determine whether the university’s actions were ministerial or discretionary in nature
 

 In
 
 University of Nevada, Reno v. Stacey,
 
 this court held that a state university’s decision to grant or deny tenure to a nontenured professor is a discretionary act, consequently the university is immune from civil liability.
 
 [5]
 
 This court was called upon to determine whether the district court erred in denying UNR’s motion for summary judgment based upon the employment contract that the parties had executed. UNR contended that summary judgment was required since its decision to deny tenure was discretionary under the employment contract. Stacey contended that UNR was contractually obligated to grant him tenure because he had obtained excellent evaluations over the years.
 
 [6]
 

 We agreed with UNR and held that because the contract was unambiguous, its plain meaning controlled our analysis.
 
 [7]
 
 Numerous contractual provisions negated any theory that tenure was automatic. Instead, the contract provided that tenure was a privilege and that making a decision of such import involved consideration of numerous criteria. The contractual provisions clearly indicated the grant of tenure required the exercise of discretion and subjective decision making.
 
 [8]
 

 [Headnotes 4, 5]
 

 Furthermore, although the contract provisions controlled our analysis, we agreed with UNR’s contention that it was immune from suit because its actions were discretionary.
 
 [9]
 
 NRS 41.032(2) provides qualified immunity to state agencies in the performance of discretionary acts. A discretionary act requires personal deliberation and judgment.
 
 [10]
 
 But when an act is ministerial or operational,
 
 *981
 
 the qualified immunity for discretionary acts does not apply.
 
 [11]
 
 In
 
 Stacey,
 
 we concluded that a university’s decision to grant tenure is discretionary and that therefore, the university is statutorily immune from liability.
 
 [12]
 

 We are now called upon to determine whether UNLV may be held civilly liable for breach of contract in terminating a tenured faculty member. We conclude, based upon the specific facts presented, that UNLV may be sued for breach of contract. Nothing in
 
 Stacey
 
 indicates a university is immune from civil liability for breach of contract.
 
 Stacey
 
 simply held that, as a matter of law, the contract at issue indicated that granting tenure was a discretionary decision.
 
 [13]
 

 Here, UNLV entered into a contract with Sutton pursuant to a court order and reinstated his employment as a tenured professor, until, according to the specific terms of the contract, such time as his tenure is revoked by hearing held pursuant to the UCCSN code. We conclude that UNLV’s president erroneously concluded that UNLV could proceed anew on the original 1992 complaint. First, the judgment in Sutton I reinstated Sutton’s tenured employment by an integrated agreement that did not mention the prior evaluations. Second, the code prohibits the waiver of the requirement that hearings on tenure be conducted within six months of the filing of an administrative termination complaint. Third, the agreement incorporated the university code. Fourth, while the stipulated judgment allowed UNLV to initiate new proceedings at its discretion, the university erroneously pressed forward on the allegations of the 1992 complaint. Thus, UNLV breached the Sutton I settlement when it proceeded on the original 1992 complaint in 1999.
 

 Because the hearing violated the specific terms of the contract, we are not required to evaluate UNLV’s employment decision as discretionary or ministerial and whether immunity attaches. The jury was required to make a factual determination as to whether the hearing was even appropriate based upon the contract’s terms. Therefore, the district court properly allowed the breach-of-contract claims to proceed to trial.
 

 B. Judicial review of UNLV’s decision
 

 UNLV contends alternatively that Sutton was limited in the district court to judicial review of UNLV’s administrative procedure’s conclusions only, and that the trial court erred by allowing Sutton to proceed to trial on his breach-of-contract claims. We disagree.
 

 
 *982
 
 We are mindful of the precedent that decisions made at the university level are generally limited to judicial review.
 
 [14]
 
 In
 
 Stacey,
 
 we stated:
 

 [W]e are not unaware of the long-standing precedent recognizing that faculty appointment at the university level is an area poorly suited for judicial supervision, and thus one where judicial restraint must be exercised.
 
 See Kunda
 
 v.
 
 Muhlenberg College,
 
 621 F.2d 532 (3d Cir. 1980);
 
 Faro v. New York Univ.,
 
 502 F.2d 1229 (2d Cir. 1974). Indeed, other jurisdictions have held that a university’s decision to grant tenure is a discretionary exercise of judgment that should not be actionable unless arbitrary or unconstitutional.
 
 See Harrison v. Goldstein,
 
 611 N.Y.S.2d 623 (N.Y. App. Div. 1994);
 
 Coe
 
 v.
 
 Board of Regents,
 
 409 N.W. 2d 166 (Wis. Ct. App. 1987);
 
 Goodisman v. Lytle,
 
 724 F.2d 818 (9th Cir. 1984).
 
 [15]
 

 We have further emphasized the importance of academic freedom in our society by reaffirming our commitment to protect a university’s inherent right to govern itself within constitutional limitations.
 
 [16]
 

 In the present case, however, Sutton did not simply challenge UNLV’s hearing process or the results of that process. His complaint alleged that, based on his 1999 employment contract, UNLV had no authority to hold the hearing. The 1999 contract contained an integration clause
 
 [17]
 
 and further included the provisions of the UCCSN code, which also contain an integration clause.
 
 [18]
 
 The
 
 *983
 
 UCCSN code requires UNLV to hold a hearing and make a recommendation to the university president within six months of the administrative complaint’s filing. The code does not allow the parties to waive the six-month requirement. Here, UNLV held the hearing almost seven years after the unsatisfactory evaluations in 1990 and 1991, and the 1999 hearing related only to Sutton’s conduct and evaluations in 1990 and 1991. If the contract did not allow the hearing, then UNLV breached the contract by proceeding with the hearing, and the result of the hearing and any decision rendered is of no effect.
 

 Thus, the question before the district court was not judicial review of a decision terminating a tenured faculty member’s employment, but whether a court-ordered contract allowed UNLV to proceed with the hearing. If the district court were limited to judicial review of UNLV’s administrative decision in this case, then one party to the contract — UNLV—would be in a position to determine whether the contract had been breached.
 

 Factual disputes regarding breach of contract are questions for a jury to decide. After such questions are first decided by the jury, judicial review of UNLV’s decision would then be appropriate but only if UNLV did not violate the terms of the 1999 contract by proceeding with the code hearing. We therefore conclude that the district court did not err by allowing the breach-of-contract claims to proceed to trial.
 

 II. Pretrial motion and trial decisions by the district court
 

 A. The district court appropriately denied UNLV’s request to apply issue preclusion based on the special code hearing
 

 UNLV contends the district court erred by denying a pretrial motion to establish issue preclusion based on the UCCSN code hearing. UNLV argues that the hearing process and the subsequent appeal to the Board of Regents established that UNLV terminated Sutton with just cause. Therefore, UNLV sought to prevent Sutton from arguing at trial that UNLV did not have just cause to terminate his employment.
 

 “ ‘ “The general rule of issue preclusion is that if an issue of fact or law was actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action between the parties.” ”’
 
 [19]
 
 “ ‘The doctrine provides that any
 
 *984
 
 issue that was actually and necessarily litigated in [case I] will be estopped from being relitigated in [case II].’ ”
 
 [20]
 

 Issue preclusion may apply to administrative proceedings.
 
 [21]
 
 The availability of issue preclusion is a mixed question of law and fact. However, the legal issues predominate.
 
 [22]
 
 This court performs a de novo review of whether issue preclusion is available.
 
 [23]
 
 Once it is determined that issue preclusion is available, the actual decision to apply it is left to the discretion of the district court.
 
 [24]
 

 The three part test for applying issue preclusion is:
 

 “(1) the issue decided in the prior litigation must be identical to the issue presented in the current action; (2) the initial ruling must have been on the merits and have become final; and (3) the party against whom the judgment is asserted must have been a party or in privity with a party to the prior litigation.”
 
 [25]
 

 The issues decided during the 1999 UCCSN code hearing, and the subsequent appeal to the Board of Regents, were not identical to the issues presented in Sutton’s district court complaint. The hearing panel did not consider Sutton’s 1999 contract or his performance in 1999. To the contrary, the panel only heard evidence regarding events which took place in 1990 and 1991.
 

 Sutton sought relief for breach of the 1999 contract. Since the special hearing held by UNLV did not address Sutton’s 1999 contract, but rather allegations dating back to 1990-91, the district court did not abuse its discretion in denying the request to apply issue preclusion.
 

 B. The district court did not abuse its discretion in excluding the hearing officer’s report and record
 

 UNLV argues the district court abused its discretion in excluding the hearing officer’s report and record, which recommended
 
 *985
 
 Sutton’s termination. The trial court excluded the report at trial under NRS 48.035.
 
 [26]
 
 The court did, however, admit the index to the special code hearing record. “The decision to admit or exclude relevant evidence, after balancing the prejudicial effect against the probative value, is within the sound discretion of the trial judge, and the trial court’s determination will not be overturned absent manifest error or abuse of discretion.”
 
 [27]
 
 We conclude the district court’s decision was not manifestly erroneous or an abuse of discretion.
 

 C. The district court properly admitted evidence not presented at the special code hearing
 

 UNLV also contends the district court erred by admitting evidence at trial that was not admitted at the administrative hearing, such as Sutton’s 1999 teaching performance. According to UNLV, Sutton agreed to a process by which he could be terminated, and therefore, only evidence presented at the special code hearing should have been presented to the jury. As discussed above, however, evidence at the UCCSN code hearing was limited to matters from 1990 and 1991, and Sutton was required to defend himself at the special hearing eight years after the events occurred. In contrast, Sutton’s complaint in district court focused on the breach of his 1999 contract with UNLV. The 1999 contractual issues were not at issue at the UCCSN code hearing. Therefore, the district court did not err in admitting relevant evidence.
 
 [28]
 

 D. The district court properly admitted the 1999judgment
 

 UNLV contends the district court erred by allowing the jury to interpret the meaning of the Sutton I judgment. The stipulation, entered into by the parties in open court (Sutton I), required UNLV “to continue [Sutton] in his employment unless and until such time as his tenure is revoked by hearing held pursuant to the university code.’ ’ UNLV argues that the stipulation authorized UNLV to conduct the hearing and prevented Sutton from arguing at trial that UNLV could not conduct the hearing. We disagree.
 

 Normally, the ‘ ‘ ‘legal operation and effect of a judgment must be ascertained by a construction and interpretation of it,’ ” which
 
 *986
 
 presents a question of law for the court.
 
 [29]
 
 However, in the instant matter, the parties’ stipulation, which became a part of the judgment, was admitted by the district court at trial. Sutton sought and was denied a partial summary judgment before trial. Sutton suggested in his summary judgment motion that the UCCSN code, which was incorporated into his 1999 contract, did not permit UNLV to terminate his employment because the hearing was held more than six months after the filing of the initial administrative complaint. UNLV opposed that motion, arguing that the stipulation contained in the 1999 judgment did allow the parties to proceed with a hearing in 1999.
 

 We conclude the district court did not err by admitting the 1999 judgment into evidence. The judgment was relevant to the issue of whether the parties intended the 1999 contract as an integration of their prior stipulation. Further, the judgment was relevant to President Harter’s motive in pursuing the hearing, despite the six-month rule. The jury was entitled to review the 1999 judgment in light of all the other evidence presented.
 

 E. The district court did not err in denying UNLV’s motion for directed verdict on the issue of the integration clause, failing to allow an amendment, and refusing to instruct the jury regarding waiver
 

 UNLV claims the district court erred by denying its motion for a directed verdict and motion for a new trial, all related to the integration clause. UNLV further argues the district court erred by refusing an amendment to its answer to conform to the evidence presented at trial to include the affirmative defense of waiver. Moreover, UNLV contends the district court erred in not instructing the jury on waiver.
 

 The district court denied the motion for directed verdict on the grounds that UNLV failed to plead waiver as a defense in its answer, and Sutton’s actions were an issue of fact for the jury to decide. A directed verdict is proper when ‘ ‘the evidence is so overwhelming for one party that any other verdict would be contrary to the law.”
 
 [30]
 
 ‘‘[T]he trial court must view the evidence and all inferences most favorably to the party against whom the motion is made.”
 
 [31]
 
 We must apply the same standard upon review.
 
 [32]
 

 
 *987
 
 “A waiver is an intentional relinquishment of a known right. . . . [T]o be effective, a waiver must occur with full knowledge of all material facts.”
 
 [33]
 
 Therefore, we must determine whether there is insufficient evidence to permit any finding other than that Sutton waived the mandatory six-month deadline for a hearing that was incorporated into the judgment through the integration clause.
 

 UNLV contends that Sutton never objected to the hearing going forward in November 1999, and his failure to object constitutes a waiver of his right otherwise to object. However, Sutton contends he participated in the hearing because he believed UNLV would proceed, whether or not he attended, and he wanted to tell his side of the case. Moreover, President Harter testified that she made the decision to go forward with the hearing without regard to the six-month rule under the code, without consulting with Sutton.
 

 The evidence presented was not so overwhelming that any other verdict would be contrary to the law. Sutton presented evidence that he did not intentionally waive the six-month deadline and, further, that the six-month time period could not be waived by either party to the contract. Consequently, the district court did not err in denying UNLV’s motion for a directed verdict.
 

 As mentioned, the district court did not allow UNLV to amend its answer to assert waiver as an affirmative defense. UNLV first raised the issue of waiver as a defense to Sutton’s cross-motion for summary judgment. UNLV further asserts it included the issue of waiver in its separately filed pretrial memorandum. According to UNLV, its twelfth affirmative defense of estoppel was consistent with the waiver defense. Finally, UNLV contends it presented evidence of waiver without objection by Sutton.
 

 NRCP 8(c) requires waiver to be pleaded affirmatively in the answer.
 
 [34]
 
 An affirmative defense not pleaded in the answer is waived.
 
 [35]
 
 However, NRCP 15(b) allows a party to move to amend
 
 *988
 
 its pleadings to conform to the evidence presented at trial.
 
 [36]
 
 “[T]he liberal policy provided in Rule 15(a) ‘does not mean the absence of all restraint. Were that the intention, leave of court would not be required. The requirement of judicial approval suggests that there are instances where leave should not be granted.’ ’ ’
 
 [37]
 
 We conclude that the district court did not abuse its discretion in denying UNLV’s motion to amend.
 

 UNLV’s motion to amend the pleadings was made after the close of evidence, during arguments over jury instructions and after the court’s refusal to give an instruction regarding waiver. The proposed amendment alleged a defense that UNLV contends is not a trivial matter and, further, which goes to the heart of Sutton’s claim that UNLV was not allowed to conduct the November 1999 hearing. The defense asserts matters that clearly were within UNLV’s knowledge at least nine months before trial. The district court had the discretion to refuse UNIV’s amendment of its pleading at the close of evidence. A motion for leave to amend is left to the sound discretion of the trial judge, and the trial judge’s decision will not be disturbed absent an abuse of discretion.
 
 [38]
 
 We conclude the district court did not abuse its discretion in declining to allow the amendment to include waiver and also conclude the district court properly denied the requested jury instruction.
 

 F. The district court did not err in denying the motion for a directed verdict on Sutton’s claim for breach of the implied covenant of good faith and fair dealing
 

 UNLV contends the district court erred by denying its motion for a directed verdict on Sutton’s claim for breach of the implied
 
 *989
 
 covenant of good faith and fair dealing. According to UNLV, Sutton did not produce evidence that UNLV engaged in grievous and perfidious misconduct. Further, UNLV contends that Sutton failed to prove damages or offer expert testimony in support thereof. We disagree.
 

 In reviewing an order denying a motion for a directed verdict, the evidence must be viewed in the light most favorable to the party against whom the motion is made. The standard of review is whether, based on the evidence, a reasonable person would have necessarily reached a different conclusion.
 
 [39]
 
 It is well settled in Nevada that “every contract imposes upon the contracting parties the duty of good faith and fair dealing.”
 
 [40]
 
 However, a breach of this duty does not give rise to tort liability unless there is a special relationship between the tort-victim and the tortfeasor.
 
 [41]
 
 Tort liability for breach of the implied covenant of good faith and fair dealing is appropriate where “ ‘the party in the superior or entrusted position’ has engaged in ‘grievous and perfidious misconduct.’ ”
 
 [42]
 
 Furthermore, a successful plaintiff is entitled to compensation for all of the natural and probable consequences of the wrong, including injury to the feelings from humiliation, indignity and disgrace to the person.
 
 [43]
 

 At trial, Sutton presented evidence that after winning reinstatement after six years of exclusion from UNLV, President Harter conducted a hearing to fire him under his new 1999 contract, in violation of the UCCSN code, based upon events which predated the contract, because UNLV “didn’t believe in the justice of the [1999 jury trial] judgment.” UNLV claimed that it terminated Sutton in 1999 because of his successive poor evaluations in 1990 and 1991, poor student evaluations, and his failure to publish a paper. However, the jury heard evidence that for the years 1990 and 1991, neither the College of Business nor the Department of Public Administration ever adopted a publication requirement. The jury further received evidence that Sutton had in fact prepared a research paper; Sutton’s former department chairman testified that the paper was superbly written. Additionally, there was evidence that UNLV indicated to Sutton’s department chairman in 1999, even before the UCCSN code hearing had convened, that Sutton would not be around to teach in the spring. Finally, Sutton testified
 
 *990
 
 he was “crushed” by being fired for the second time and became the “laughing-stock” at UNLV.
 

 We conclude that the district court did not err in denying UNLV’s motion for a directed verdict as a reasonable person would not have necessarily come to a different conclusion with respect to bad faith. Furthermore, Sutton was not required to present expert testimony regarding his subjective emotional distress because Sutton only requested compensation for past humiliation and emotional distress.
 
 [44]
 

 We have considered the other issues raised by UNLV and conclude they are without merit.
 
 [45]
 

 CONCLUSION
 

 We affirm the district court’s judgment.
 

 Shearing, C. L, Agosti, Rose, Becker and Maupin, JL, and Dobrescu, D. L, concur.
 

 [2]
 

 University of Nevada, Reno
 
 v.
 
 Stacey,
 
 116 Nev. 428, 431, 997 P.2d 812, 814 (2000).
 

 [3]
 

 Butler
 
 v.
 
 Bogdanovich,
 
 101 Nev. 449, 451, 705 P.2d 662, 663 (1985).
 

 [4]
 

 Wiltsie v. Baby Grand Corp.,
 
 105 Nev. 291, 292, 774 P.2d 432, 433 (1989).
 

 [5]
 

 116 Nev. at 432, 997 P.2d at 814.
 

 [6]
 

 Id.
 
 at 430-31, 997 P.2d at 813-14.
 

 [7]
 

 Id.
 
 at 433, 997 P.2d at 815.
 

 [8]
 

 Id.
 
 at 431-32, 997 P.2d 814-15.
 

 [9]
 

 Id.
 
 at 434-35, 997 P.2d at 816.
 

 [10]
 

 Id.
 
 at 434, 997 P.2d at 816 (citing
 
 Parker
 
 v.
 
 Mineral County,
 
 102 Nev. 593, 595, 729 P.2d 491, 493 (1986)).
 

 [11]
 

 Andolino v. State of Nevada,
 
 97 Nev. 53, 55, 624 P.2d 7, 9 (1981).
 

 [12]
 

 116 Nev. at 434-35, 997 P.2d at 816.
 

 [13]
 

 Id.
 
 at 433, 997 P.2d at 815.
 

 [14]
 

 Richardson v. Bd. Regents,
 
 70 Nev. 347, 269 P.2d 265 (1954).
 

 [15]
 

 116 Nev. at 433-34, 997 P.2d at 815.
 

 [16]
 

 Id.
 
 at 434, 997 P.2d at 816.
 

 [17]
 

 The integration clause in the 1999 contract reads as follows:
 

 THE UNIVERSITY OF NEVADA SYSTEM CODE — The University of Nevada System Code, the official document governing personnel matters and procedures, is a regularly published document and is available at each institution. The Code is incorporated herein and by this reference made a part of this contract. The Code requires that all terms and conditions of employment be specified in this document. Any other terms, understandings, promises, prior negotiations or representations, or conditions not specified in the REMARKS section on the reverse side of this document, or attached to and made a part of this contract, shall not be considered a part of the contract of employment. This contract is not binding or of any legal effect until duly executed by both the appointee and the appointing officer.
 

 [18]
 

 Section 5.4.3 of the UCCSN code provides:
 

 All employment contracts shall be in writing and shall specify therein the terms and conditions of employment. The provisions of the University and Community College System of Nevada
 
 Code
 
 in their entirety, shall be a part of the terms and conditions of every employment contract, except as may be varied in writing by the parties to the contract.
 
 Any understanding, promise, term, condition or representation not contained in the contract is of no effect.
 

 (Second emphasis added.)
 

 [19]
 

 Executive Mgmt. v. Ticor Title Ins. Co.,
 
 114 Nev. 823, 835, 963 P.2d 465, 473 (1998) (quoting
 
 University of Nevada
 
 v.
 
 Tarkanian,
 
 110 Nev. 581, 599,
 
 *984
 
 879 P.2d 1180, 1191 (1994) (quoting Charles A. Wright,
 
 Law of Federal Courts
 
 § 100A, at 682 (4th ed. 1983))).
 

 [20]
 

 Id.
 
 (quoting
 
 Tarkanian,
 
 110 Nev. at 599, 879 P.2d at 1191 (alteration in original)).
 

 [21]
 

 Britton v. City of North Las Vegas,
 
 106 Nev. 690, 799 P.2d 568 (1990).
 

 [22]
 

 Davis & Cox v. Summa Corp.,
 
 751 F.2d 1507, 1519 (9th Cir. 1985).
 

 [23]
 

 Id.
 

 [24]
 

 Id.
 

 [25]
 

 Executive Mgmt.,
 
 114 Nev. at 835-36, 963 P.2d at 473-74 (quoting
 
 Tarkanian,
 
 110 Nev. at 598, 879 P.2d at 1191).
 

 [26]
 

 NRS 48.035(1) provides: “Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury.”
 

 [27]
 

 Dow
 
 Chemical Co. v. Mahlum,
 
 114 Nev. 1468, 1506, 970 P.2d 98, 123 (1998),
 
 overruled in part on other grounds by GES, Inc. v. Corbitt,
 
 117 Nev. 265, 21 P.3d 11 (2001).
 

 [28]
 

 NRS 48.015.
 

 [29]
 

 Ormachea v. Ormachea,
 
 67 Nev. 273 , 291-92, 217 P.2d 355, 364-65 (1950) (quoting
 
 Aseltine v. District Court,
 
 57 Nev. 269, 273, 62 P.2d 701, 702 (1936)).
 

 [30]
 

 Bliss
 
 v.
 
 DePrang,
 
 81 Nev. 599, 602, 407 P.2d 726, 727-28 (1965).
 

 [31]
 

 Id.
 

 [32]
 

 Id.
 
 at 601, 407 P.2d at 727.
 

 [33]
 

 Thompson
 
 v.
 
 City of North Las Vegas,
 
 108 Nev. 435 , 439, 833 P.2d 1132, 1134 (1992).
 

 [34]
 

 NRCP 8(c) states:
 

 Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.
 

 [35]
 

 Tobler & Oliver Constr. v. Nevada St. Bank,
 
 89 Nev. 269, 271, 510 P.2d 1364, 1365 (1973).
 

 [36]
 

 NRCP 15(b) states:
 

 Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
 

 [37]
 

 Ennes
 
 v.
 
 Mori,
 
 80 Nev. 237, 243, 391 P.2d 737 , 739 (1964) (quoting
 
 Schick v. Finch,
 
 8 F.R.D. 639, 640 (S.D.N.Y. 1944)).
 

 [38]
 

 Stephens
 
 v.
 
 Southern Nevada Music Co.,
 
 89 Nev. 104, 105, 507 P.2d 138, 139 (1973).
 

 [39]
 

 Drummond v. Mid-West Growers,
 
 91 Nev. 698, 542 P.2d 198 (1975).
 

 [40]
 

 Hilton Hotels v. Butch Lewis Productions,
 
 109 Nev. 1043, 1046, 862 P.2d 1207, 1209 (1993).
 

 [41]
 

 K Mart Corp.
 
 v.
 
 Ponsock,
 
 103 Nev. 39, 732 P.2d 1364 (1987).
 

 [42]
 

 Great American Ins. v. General Builders,
 
 113 Nev. 346, 355, 934 P.2d 257, 263 (1997) (quoting
 
 Ponsock,
 
 103 Nev. at 49, 732 P.2d at 1370).
 

 [43]
 

 Lerner Shops v. Marin,
 
 83 Nev. 75, 79, 423 P.2d 398, 401 (1967).
 

 [44]
 

 See id.
 
 at 79-80, 423 P.2d at 401 (“This court, however, has limited the claim for future pain and suffering arising from subjective physical injury, and in such cases the claim must be substantially supported by expert testimony to the effect that future pain and suffering is a probable consequence rather than a mere possibility.” (citing
 
 Curti
 
 v.
 
 Franceschi,
 
 60 Nev. 422, 111 P.2d 53 (1941);
 
 Gutierrez v. Sutton Vending Serv.,
 
 80 Nev. 562, 397 P.2d 3 (1964))).
 

 [45]
 

 UNLV also contended the jury was not properly instructed regarding just cause for Sutton’s dismissal. Based on our decision in this matter, we conclude this issue lacks merit.